482 A.2d 1014

**COMMONWEALTH of Pennsylvania**

v.

**David COOPER, Appellant.**

Superior Court of Pennsylvania.

Argued May 18, 1983.

Filed Oct. 5, 1984.

Petition for Allowance of Appeal Denied Feb. 15, 1985.

Leslie J. Carson, Jr., Philadelphia, for appellant.

Garold E. Tennis, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before HESTER, BROSKY and BECK, JJ.

## OPINION

BROSKY, Judge:

Appellant, David Cooper, appeals from judgment of sentences of ten to twenty years imprisonment for robbery, five to ten years imprisonment for burglary, and ten years probation for criminal conspiracy, imposed by the Court of Common Pleas of Philadelphia upon a verdict of guilty entered after trial by jury.[1] Appellant raises several issues on appeal. Having found that appellant's sentence was improperly amended to require participation in a drug program as a condition of parole or probation, we vacate modification of judgment of sentence and reinstate the original sentence imposed by the trial court on November 9, 1981.[2] As to all other issues, we affirm the trial court.

Appellant's case has a rather long procedural history. On December 17, 1980, appellant was found guilty of Robbery, Recklessly Endangering Another Person, Possessing Instruments of a Crime, Burglary, and Theft by Unlawful Taking. On April 28, 1981, based on a finding that the jury

1. Appellant received lesser concurrent sentences of one to two years imprisonment for recklessly endangering another person and two and one half to five years imprisonment for possessing instruments of a crime.

2. On January 7, 1982, fifty-nine days after imposition of sentence and after sentence had been appealed, appellant's sentence was amended to require participation in a drug program under the supervision of the State Board of Probation or Parole as a condition of any probation or parole.

could have reasonably inferred that the appellant had engaged in prior criminal activity because of excessive references to police photographs, the lower court granted appellant's post-verdict motion for a new trial.[3] Subsequently, on August 12, 1981, at new trial, appellant was again found guilty. On January 4, 1982, in absence of counsel, a hearing to reconsider sentence was held. On January 7, 1982, appellant's sentence was amended to include drug therapy as a condition of any parole or probation.

As established at trial, on April 6, 1979, at about 8 p.m., appellant and another man entered the home of Mr. and Mrs. Rufus Frazier.[4] The men threatened the Fraziers with a knife and took from them twenty-five dollars in cash, a television set, and a small radio. During the crime, while appellant's accomplice searched the second floor, the appellant remained downstairs with the Fraziers, holding the knife to Mr. Frazier's neck. The same evening, after looking through 500 to 800 photographs at the police station, Mrs. Frazier identified the appellant in one of the pictures. Subsequently, on May 2, 1980, appellant was arrested and thereafter identified by Mrs. Frazier at a lineup. Prior to the suppression hearing, however, all but 18 of the photographs were lost or misplaced.

■ Appellant first argues that the Commonwealth did not carry its burden of proving that the photographic identification procedure was not suggestive when it failed to produce several hundred photographs exhibited to the identification witnesses and produced only eighteen of those photographs for review. The appellant maintains, thus, that the case should be remanded for a new trial preceded by a hearing to determine whether the Commonwealth can show by clear and convincing evidence that any in-court or lineup identification following the photographic array had an origin wholly independent of the photographic identification. In support of his argument, appellant cites *Common-*

3. Motion in Arrest of Judgment was denied.

4. The Fraziers were married between the time of the crime and appellant's trial.

*wealth v. Jackson,* 227 Pa.Super. 1, 323 A.2d 799 (1974), and *Commonwealth v. Hodge,* 246 Pa.Super. 71, 369 A.2d 815 (1977). Appellant, however, in attempting to apply *Jackson* and *Hodge* to the instant case, fails to consider the difference in circumstances between *Jackson* and *Hodge,* and the instant case, and, thus, misinterprets their applicability.

In the instant case the Commonwealth made available for review 18 photographs from the original array (including that of the appellant) which were shown to the complainant. In contrast, in both *Jackson* and *Hodge* the Commonwealth produced none of the photographs viewed by the witnesses. Moreover, in the instant case, Detective Wojciechowski (the officer who presented the photographic array to Mrs. Frazier), testified that all of the photographs, including those which were missing, were standard police photographs of adult black males. Mrs. Frazier, too, testified, explaining that there were no other pictures of the appellant among the photographs that she looked through and, also, that she stopped looking at the photographs the instant she saw appellant's photo, and that she immediately recognized him without any doubt as being the man who had robbed her.

Appellant, however, in opposition to any argument which attempts to distinguish *Jackson* and *Hodge* from the instant case, maintains that the issue is not whether a sufficient number of photos were displayed, but whether the failure to produce a portion of the photos made it impossible for the court to determine whether those missing photos were suggestive.

Appellant apparently argues that the holdings in both *Jackson* and *Hodge* when no photographs were produced for review can be expanded to act as precedent in cases when a portion of the photographs are presented for review, though the circumstances differ. At the core of appellant's argument is the belief that when out-of-court photo identifications are made and a portion of the photographs used are unavailable for review, the out-of-court identification evidence and all subsequent in-court and line-

up identification evidence must be suppressed. This court disagrees.

In neither *Jackson* nor *Hodge* does the court exclude a review of the circumstances in determining whether the failure to produce a portion of a photographic array requires the suppression of identification evidence. Rather, in *Jackson*, in explaining its holding that the Commonwealth's failure to produce the pretrial photographic layout at the suppression hearing violated the defendant's right to due process, the court emphasized:

"... [T]he original confrontation between the witness and the appellant was not conducive to a strong identification. Mrs. Jackson testified that she saw the appellant for only one second immediately after having been awakened by a clamor in the hallway. While the confrontation was face to face, the only source of illumination in the darkened apartment came from light above and behind the appellant. She also testified that it was only probable that she could have identified the appellant had she not seen his picture." *Jackson*, supra 227 Pa.Super. at 11, 323 A.2d at 804.

Moreover, in *Hodge*, in granting suppression of testimony concerning the pretrial photographic identification, the court states:

"Such ruling was proper since the Commonwealth failed to retain the photographs which were utilized and this made it impossible *under the circumstances* to review the fairness of the procedures challenged." *Hodge*, supra, 246 Pa.Super. at 76, 369 A.2d at 817. (Emphasis added).

As cited, in both *Jackson* and *Hodge* the court makes its holding in light of the circumstances (with special emphasis on whether it would be impossible under the circumstances to review the fairness of the procedures challenged). Appellant, thus, incorrectly maintains that this court should not consider the particular circumstances of the instant case.

Here, Mrs. Frazier viewed the intruder for approximately twenty minutes, at a distance of from two to five feet, and in a well-lighted room. She and the intruder conversed, and looked at each other continuously. As earlier stated, 18 of the photographs were available for review (including that of the appellant), and, as Detective Wojciechowski testified, the missing photographs were of adult black males and did not contain a second picture of the intruder. From the day of the incident to the present day, Mrs. Frazier has expressed no doubt that the appellant was in fact the intruder.

Similar to the present case is *Commonwealth v. Flynn*, 314 Pa.Super. 162, 460 A.2d 816 (1983) where the police, too, were not able to produce the exact array of photographs shown to the victim, the court also rejected appellant's suppression claims. In *Flynn* the police displayed a book similar to the one that had been shown to the witness and which contained only sixteen of the original photographs. The court, in holding that the Commonwealth's failure to produce the exact photographic array did not prejudice the appellant, explained that both the detective responsible for the presentation of the array and the complainant testified that no influence had been exerted to compel an identification and, moreover, the confrontation between the victim and appellant was conducive to strong identification. We find *Flynn*, supra, applicable to the instant case and that, under the circumstances, it is possible to review the fairness of the procedures challenged. Having found that the lower court could properly find the out-of-court identification admissible, we need not discuss whether the in-court identification or lineup identification had an independent basis. Appellant's first assignment of error, thus, is without merit.

■ Appellant next argues that the trial court erred in advising the jury at the close of the Commonwealth's case that the district attorney had located 19 additional photographs. Appellant maintains this unfairly prejudiced his defense since the only significant information was that he had been irreparably prejudiced when the police initially failed to produce the missing photographs. Given, how-

ever, our finding that the appellant was not irreparably prejudiced when the police failed to produce a portion of the photographs, we find appellant's second argument moot.[5]

█ In appellant's third assignment of error, he maintains that the lower court erred when it permitted the amendment of information # 1674 charging appellant with having recklessly endangered another person to include Rufus Frazier as an additional victim. We disagree. An amendment of an information which changes the description of an offense is permissible so long as the amendment does not charge an additional or different offense. Pa.R.Crim.P. 229.[6] In the instant case, Rufus Frazier is added as an additional victim, but no additional offense is charged. The appellant was charged, both, originally and subsequent to the amendment, with only one count of recklessly endangering another person.

█ Moreover, in the instant case, information 1674 was amended on December 11, 1980. Appellant did not proceed to retrial until August 10, 1981.[7] Appellant, thus, had approximately eight months time to adequately prepare his case.

5. The Commonwealth maintains that appellant in his brief provides absolutely no citation to where in the record the alleged error occurred or where defendant timely objected to the complained of charge and we should therefore not consider this aspect of the appeal. Although appellant did fail to include specific references to the record in his argument section of his brief, contrary to Pa.R.A.P. 2119(c), and in his statement of the case, as requested by Pa.R.A.P. 2117(a)(4), he did state in both the argument section of his brief and in his statement of the case that the error occurred "at the close of the Commonwealth's case." Brief for appellant at 6, 14. It is certainly better practice to include specific references, as the rules require, but we shall not quash an appeal where a reference is made and we can (though with some effort) review the merits of appellant's allegation.

6. See, also, *Commonwealth v. King,* 287 Pa.Super. 105, 110, 429 A.2d 1121, 1124 (1981).

7. Appellant originally proceeded to trial on December 15, 1980, and following a verdict of guilty was awarded a new trial on post-verdict motions.

"The purpose of Rule 229 is to insure that a defendant is fully appraised [sic] of the charges against him, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Stanley,* 265 Pa.Super. 194, 212, 401 A.2d 1166, 1175 (1979). Surely, given the circumstances of this case, an eight month period allowed the appellant adequate time in order to prepare a responsible defense for trial. The Commonwealth did not add an additional or different charge when it amended the information. Moreover, no elements of the crime were changed, and the information as amended evolved out of the same factual situation as the original information. We find appellant hard-pressed not to have been on notice in regard to his criminal conduct. For the above reasons we hold appellant's third argument to be without merit.

In his fourth argument, appellant maintains that trial counsel was ineffective. Appellant argues that counsel should not have brought out on cross-examination the photographic identification evidence since it necessarily implied that the appellant had a criminal record, and that counsel should have appealed from the denial of appellant's motion in arrest of judgment after appellant's first trial. We find no merit to appellant's argument.

■ To begin, in examining a claim of ineffectiveness of counsel, a two-step analysis is required. *Commonwealth v. Golson,* 310 Pa.Super. 532, 456 A.2d 1063 (1983). The court must first determine whether the issue underlying the charge is of arguable merit, and second, if the charge does have merit, inquiry shifts to whether the course chosen by counsel had some reasonable basis aimed at promoting the client's interest. *Golson,* supra. In making this assessment, however, the court will not employ a hindsight evaluation to determine whether other alternatives may have been more reasonable, but will look to whether there was a reasonable basis for the course of action actually selected. *Commonwealth v. Musi,* 486 Pa. 102, 404 A.2d 378 (1979).

■ Here, as to appellant's first allegation of ineffectiveness of trial counsel, the Commonwealth counter-argues that counsel had a reasonable basis for eliciting testimony regarding the photographic identification procedure. The Commonwealth reasons that counsel competently sought to attack the victim's identification of appellant by trying to show the in-court and lineup identification resulted from an initially suggestive photographic identification. We agree.

The key issue in the instant case was the reliability of the identification by Mrs. Frazier of the appellant. The outcome of the case was greatly dependent on the correctness of that identification. As the Commonwealth argues, it was reasonable for trial counsel to attack the reliability of the victim's out-of-court photographic identification in the hope of persuading the jury that all the victim's identifications were tainted. The tactical decision was trial counsel's to make. See *Commonwealth ex rel. Washington v. Maroney,* 427 Pa. 599, 235 A.2d 349 (1967).

As to appellant's second allegation of ineffectiveness of counsel resulting from counsel's failure to appeal the denial of appellant's motion in arrest of judgment, appellant maintains that in post-verdict motions following the first trial, trial counsel raised a number of issues that would have justified arresting the judgment. Appellant argues there could have been no tactical or other reason for counsel to have waived that right of appeal and failure to so appeal was ineffective representation. We find appellant's assertion that counsel had waived appellant's right of appeal incorrect.

■ In the instant case following appellant's first trial, appellant was granted a new trial on post-verdict motions. Appellant's motion in arrest of judgment, however, was denied. As appellant argues, denial of that motion was then appealable. Rule 311 of the Rules of Appellate Procedure states:

(a) General rule. Except as otherwise prescribed by general rule, an appeal may be taken as of right from:

\* \* \* \* \* \*

(5) New trials. An order ..., or an order in a criminal proceeding awarding a new trial where the defendant claims that the proper disposition of the matter would be an absolute discharge or where the Commonwealth claims that the lower court committed an error of law.

Appellant, however, in asserting that trial counsel's failure to appeal constituted ineffective representation, incorrectly bases his argument on the premise that counsel had therefore waived that right of appeal.[8]  Appellant's right of

8.  Nor do we find merit to the issues appellant might have raised after the first trial. We have elsewhere in this opinion discussed appellant's allegation of error in the amending of information # 1674 and have denied his claim.  Additionally, we have found the identification evidence admissible and we therefore reject Mr. Cooper's insufficiency claim which is based on the premise that the identification should be excluded.

The remaining issue that appellant argues should have been advanced on appeal following his first trial is that the charges should have been dismissed due to pre-arrest delay.  Rule 1100 does provide that trial is to be commenced within 180 days of the filing of the complaint.  The period between the issuance of the complaint and warrant on April 8, 1979 and the date of appellant's arrest on May 2, 1980 is excludable, however, from the 180-day limitation if the Commonwealth establishes, by a preponderance of the evidence, that the police exercised due diligence in trying to locate and arrest appellant.  See Pa.R.Crim.P. 1100(d)(1).

There is no requirement that the Commonwealth exhaust every conceivable method of locating a defendant.  *Commonwealth v. Jones,* 256 Pa.Super. 366, 389 A.2d 1167 (1978).  The standard of due diligence requires only that reasonable efforts be made to locate and apprehend a defendant.  *Commonwealth v. Hinton,* 269 Pa.Super. 43, 409 A.2d 54 (1979).

As established in the Rule 1100 Hearing, in attempting to locate and apprehend appellant, the police (1) placed David Cooper's name in the National Crime Computer (NCIC) as wanted for charges stipulated on the warrant; (2) contacted a parole officer when the NCIC computer revealed that defendant was wanted for a parole violation; (3) went to two addresses thought to be that of the defendant on several occasions; (4) searched these neighborhoods and surrounding bars for defendant's presence; (5) periodically contacted the police in these neighborhoods; (6) posted a photograph in the district police station; (7) checked with the Bureau of Motor Vehicles to see if the defendant had changed the address in the event that he should renew his driver's

appeal, in fact, had not been waived. Rule 311 of the Rules of Appellate Procedure also states:

> Where an interlocutory order is immediately appealable under this rule, failure to appeal under subdivision (a) ... shall not constitute a waiver of the objection to the order and the objection may be raised on any subsequent appeal in the matter from a determination on the merits.

For the above reasons we find appellant's second allegation that trial counsel was ineffective without merit.

■ Lastly, appellant argues that amendment of his sentence to require participation in a drug program as a condition of probation or parole was unlawful given that the amended sentence was imposed more than 30 days after sentencing and that an appeal had been filed. We agree.[9]

Following the second trial, sentence was imposed on November 9, 1981. Subsequently, on January 7, 1982, 59 days after imposition of sentence and after sentence had been appealed, appellant's sentence was amended to require participation in a drug program under the supervision of the State Board of Probation or Parole.

On January 7, 1982, however, the trial court was without jurisdiction to alter sentence and, thus, any action taken was null and void. Section 5505 of the Judicial Code provides:

> Except as otherwise provided or prescribed by law, a court upon notice to the parties may modify or rescind

license; (8) learned that the defendant had been at the Coatsville Hospital prior to the crime and unsuccessfully sought a forwarding address and (9) contacted the Postal Inspector to see if there was record of defendant's forwarding address. (N.T. 1100 9/5/80 9–21, 34–35, 40, 47, 67).

Thus, although some of the Commonwealth's efforts may not have been fruitful in helping to locate the appellant, the investigation included several steps taken by police officers which demonstrated due diligence.

9. Appellant also argues that the amended sentence was unlawful because it increased appellant's sentence and was imposed in absence of counsel. Because we find that the amended sentence was unlawful given that it was imposed more than 30 days after sentencing and that an appeal had been filed, we do not discuss appellant's other arguments.

any order within 30 days after its entry, notwithstanding the prior termination of a term of court, if no appeal from such order has been taken or allowed. 42 Pa.C.S.A. § 5505.

In view of the fact that appellant had already filed a notice of appeal,[10] and more than 30 days had elapsed since sentencing, the attempt to modify sentence was a nullity. *Commonwealth v. Lynch*, 304 Pa.Super. 248, 450 A.2d 664 (1982); *Commonwealth v. Canady*, 297 Pa.Super. 292, 443 A.2d 843 (1982). We find, therefore, that appellant's sentence was improperly amended on January 7, 1982.

The trial court maintains, however, in response to appellant's post-verdict motions, that the court inadvertently omitted drug therapy as a condition of parole, and that the omission was in fact an obvious error. Given the trial court's response, we feel it is necessary to address the issue.[11]

■ A trial court has the inherent power to correct obvious and patent mistakes even after the term of the court has expired. See *Commonwealth v. Cole*, 437 Pa. 288, 263 A.2d 339 (1970). In *Cole*, supra, the expiration of the 30 day period did not eliminate the power of the court to correct an original order granting both a new trial and an arrest of judgment. The court explained that because the grant of a new trial and the grant of a motion in arrest of judgment were clearly antagonistic, the original order was patently erroneous. Id., 437 Pa. at 292, 263 A.2d at 341.

In contrast, however, in the instant case, the omission of drug therapy from the original sentence was not patently erroneous. Though the trial court noted at the sentencing hearing that the presentence report recommended that the appellant's parole be supervised by the drug or alcohol unit

10. Notice of appeal was filed to this court on November 19, 1981.

11. The Commonwealth states in its brief to this court that although it finds it remarkable that the appellant no longer wishes free professional care for his drug and alcohol problems, it does not oppose the vacation of drug therapy as a condition of appellant's parole or probation.

of the Pennsylvania Board of Probation and Parole (and also that the appellant's attorney recommended in-patient rehabilitation), the record does not indicate that the trial judge expressly intended to impose participation in a drug and alcohol program as a condition of parole. Moreover, unlike *Cole*, the original sentence in the instant case was not unlawful. In light of the circumstances, it does not appear likely that the omission of drug therapy as a condition of parole was an obvious or patent mistake.

For all of the above reasons stated, we find, thus, that the trial court improperly modified appellant's sentence on January 7, 1982. Modification of judgment of sentence is vacated, and the original sentence as imposed on November 9, 1981, reinstated.[12] We affirm the trial court on all other issues.

BECK, J., filed a concurring opinion.

BECK, Judge, concurring:

The majority finds that it is able to decide that a photographic identification was not impermissibly suggestive although the Commonwealth produced for review only nineteen of approximately 700 photographs which were shown to the victim who identified appellant as the perpetrator. While I concur in that result in this particular case, I write separately out of a concern that this Court does not thereby inadvertently enunciate a rule which affords too much flexibility to the police in conducting photo identifications.

The ultimate standard by which all identification evidence is to be assessed is one of reliability. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Photographic identification evidence should be suppressed if

12. Appellant also argues that his hearing on his motion to modify sentences held on January 4, 1982, should not have been conducted in the absence of counsel. Appellant maintains that this error nullified the order denying that motion. Because the trial court was without authority to act, we find that any error in the denial of appellant's rights at the hearing on January 4, 1982, was manifestly harmless. See *Commonwealth v. Lynch, supra; Commonwealth v. Canady, supra.*

the identification procedure "is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

In *Commonwealth v. Jackson,* 227 Pa.Super. 1, 323 A.2d 799 (1974), we held that the Commonwealth's failure to produce the photo array at the suppression hearing violated the defendant's rights to due process of law, because it deprived the defendant of the opportunity to challenge the identification procedure effectively.

More recently, this Court in *Commonwealth v. Flynn,* 314 Pa.Super. 162, 460 A.2d 816 (1983), held that *Jackson* did not compel the suppression of a photographic identification where the Commonwealth produced at the hearing only a portion of the photo array shown to the victim, especially considering that the victim in *Flynn* had a much better opportunity to observe at the scene of the crime than the victim in *Jackson.*

I agree with the majority that the instant case is closer to *Flynn* than to *Jackson.* However, I caution that *Flynn* should not be read as a holding that it always sufficient for the Commonwealth to produce some selected portion of the photo array at the suppression hearing. Rather, the inquiry should be whether sufficient evidence has been made available to defense counsel and to the court by which to evaluate the identification procedure. Facilitating a fair evaluation of the identification procedure is, after all, the underlying rationale for the requirement to produce *any* photographs. See *Jackson.*

In the instant case, the Commonwealth produced at the hearing only nineteen out of the several hundred photographs shown to the witness. The Commonwealth argues that it has complied with the spirit of *Jackson,* and that the court is entitled to conclude the identification procedure was proper, regardless of the nature of the several hundred other photos, because the victim "still had to pass over eighteen non-suggestive photographs before identifying defendant's photograph" (Commonwealth's Brief at 8). I

believe we must state clearly that this is not the case. The pertinent question is whether the array *as a whole* was unduly suggestive, not whether certain *photographs* were suggestive.

In the instant case, the suppression court had available for review only a tiny fraction of the several hundred photos which were originally displayed in forty-three separate folders. In this situation, the nature of the missing photographs and the patterns and sequences in which they were displayed are crucial. Appellant's photograph could have been conspicuously placed in a prominent position among a group of very dissimilar pictures, while the eighteen "non-suggestive photographs" were tucked away elsewhere in the array. Under such circumstances, the identification procedure could be suspect.

In *Flynn*, on the other hand, the police produced *sixteen* of the *twenty-five* photos shown to the victim. Twenty-five photos is a small enough number to be spread out on a table and viewed as a single array. In *Flynn* the court was safe in concluding that the sixteen-photo array was not suggestive, and that the production of nine additional photos was highly unlikely to make the twenty-five-photo array *as a whole* impermissibly suggestive.

I do not suggest that the Court can or should state a mathematical rule providing that a certain minimum fraction of the photo array be produced at the suppression hearing. Rather, I suggest that when the photo array is only partially reproduced in the courtroom, the possibility exists that the portion reproduced is not representative of the array as a whole, and that that possibility increases as the relative number of photographs produced decreases.

When only a small portion of the array is produced, the requirements of *Jackson* and *Flynn* are satisfied only if there is adequate evidence presented to the suppression court that the sample is in fact reasonably representative of the array as a whole. This evidence will most commonly consist of testimony by the identifying witness and the police officers involved that the missing photographs were

similar in character to those produced at the suppression hearing.

In the instant case, there is sufficient evidence in the record for the suppression court to conclude that the nineteen photographs produced are adequately representative of the array as a whole. I therefore agree with the majority that Mrs. Frazier's photographic identification of appellant was properly admitted, noting further that Mrs. Frazier, like the victim in *Flynn*, had an excellent opportunity to view appellant under good conditions at close range. I agree with the majority's disposition of the other issues raised by appellant, and I therefore join the majority's excellent opinion in all other respects.