533 A.2d 727

**COMMONWEALTH of Pennsylvania,**

v.

**Richardo HARRIS, Appellant.**

Superior Court of Pennsylvania.

Argued May 14, 1987.

Filed Oct. 8, 1987.

Reargument Denied Dec. 3, 1987.

Thomas J. Michael, Pittsburgh, for appellant.

Pamela A. Runco, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before WIEAND, KELLY and POPOVICH, JJ.

WIEAND, Judge:

Richardo Harris was tried by jury and was found guilty on two counts of robbery and two counts of criminal conspiracy. Post-trial motions (and supplemental post-trial motions) were denied, and Harris was sentenced to serve two consecutive terms of imprisonment for not less than two and one-half (2½) years nor more than ten (10) years. On direct appeal from the judgment of sentence, Harris argues that his identification as a result of a photographic display should have been suppressed because (1) it was suggestive and (2) the array was not fully preserved. He also contends that the trial court erred by (1) denying a motion in limine to prevent reference at trial to the fact that he had been identified from a photo array displayed less than an hour after the robberies and (2) denying a motion for mistrial following a statement by counsel for a co-defendant during closing argument to the effect that identification had been made by a witness who "went through the books." Finding no merit in these arguments, we affirm the judgment of sentence.

At or about 6:30 p.m. on December 4, 1984, Debra Readel and Kimberly Ann Mellon arrived at the Elks Club in McKeesport, Allegheny County, to attend a Christmas party. As they approached the front door of the club from the parking lot, they were assaulted and their purses were taken by two black males. The area was well lighted, and one of the men came face to face with Mrs. Readel. He

grabbed her, punched her on the side of the head, threw her to the ground, and grabbed her purse. The second man took a purse from Mrs. Mellon. After police had been summoned, Mrs. Readel went to police headquarters where she was shown a book containing more than two hundred photographs. From these photographs she picked Richardo Harris as her assailant. The best that Mrs. Mellon could do was select a photograph of one who looked like the man who had taken her purse. On the following day, after a photograph of Curtiss Porter had been added to the display, Mrs. Mellon identified him as the man who had grabbed her purse. The man tentatively selected on the prior evening as one who looked like her assailant had been the brother of Curtiss Porter.

Harris and Porter filed omnibus pre-trial motions requesting suppression of the testimony identifying them as the robbers, and a joint hearing was held thereon. Suppression, however, was denied. After a first trial had resulted in a mistrial, Harris filed a motion in limine to prohibit testimony at the second trial which would fix the time of the photo identification of him as between thirty minutes and an hour after the crime. This evidence, he argued, would suggest to the jury that he had a prior criminal record because the police had his photograph on file. This motion was also denied. Appellant and Porter were tried together, and both men were found guilty.

In reviewing an order denying a motion to suppress evidence, a reviewing court has a duty

'... "to determine whether the record supports the factual findings of the court below and the legitimacy of the inferences and legal conclusions drawn from those findings." ... In making this determination, this Court will consider only the evidence of the prosecution's witnesses and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted.'

*Commonwealth v. Lark*, 505 Pa. 126, 129, 477 A.2d 857, 859 (1984), quoting *Commonwealth v. Kichline*, 468 Pa.

265, 280–281, 361 A.2d 282, 290 (1976) (citations omitted). See: *Commonwealth v. Stark*, 363 Pa.Super. 356, 365, 526 A.2d 383, 388 (1987); *Commonwealth v. DiNicola*, 348 Pa.Super. 405, 409, 502 A.2d 606, 608 (1985).

Appellant contends that this Court's decisions in *Commonwealth v. Jackson*, 227 Pa.Super. 1, 323 A.2d 799 (1974) and *Commonwealth v. Hodge*, 246 Pa.Super. 71, 369 A.2d 815 (1977) require the suppression of an identification made from a photographic display where the exact photo array from which his picture was identified has not been preserved. However, in *Commonwealth v. Flynn*, 314 Pa.Super. 162, 173–174, 460 A.2d 816, 822 (1983) this Court was faced with a situation in which the Commonwealth had been able to reproduce sixteen out of twenty-five photographs used in a photo array. Additionally, the Commonwealth produced testimony describing the photographic identification procedure and the victim's immediate recognition of the appellant's photograph. Evidence also showed that there had been neither suggestiveness nor coercion toward the victim who made the identification. The Court distinguished *Jackson*, where the Commonwealth had made no record as to what photos were shown to the victim and where the confrontation between the victim and the suspect had not been conducive to a positive identification. The *Flynn* court observed that, unlike *Jackson*, there had been a confrontation between the victim and the defendant which was conducive to a positive identification. On the basis of this factual difference, the *Flynn* court affirmed a trial court decision which had denied a motion to suppress the photographic identification.

The next year, in *Commonwealth v. Cooper*, 333 Pa.Super. 559, 563–566, 482 A.2d 1014, 1016–1017 (1984), the Superior Court reviewed a case in which the Commonwealth had been able to reproduce only eighteen of more than five hundred photographs used in a photo display. In affirming the trial court's finding that the photographic identification was admissible during the defendant's trial, the Court ob-

served the different factual circumstances which had existed in *Jackson* and *Hodge* as follows:

> Appellant, however, in attempting to apply *Jackson* and *Hodge* to the instant case, fails to consider the difference in circumstances between *Jackson* and *Hodge,* and the instant case, and, thus, misinterprets their applicability.
>
> In the instant case the Commonwealth made available for review 18 photographs from the original array (including that of the appellant) which were shown to the complainant. In contrast, in both *Jackson* and *Hodge* the Commonwealth produced none of the photographs viewed by the witnesses. Moreover, in the instant case, Detective Wojciechowski (the officer who presented the photographic array to Mrs. Frazier), testified that all of the photographs, including those which were missing, were standard police photographs of adult black males. Mrs. Frazier, too, testified, explaining that there were no other pictures of the appellant among the photographs that she looked through and, also, that she stopped looking at the photographs the instant she saw appellant's photo, and that she immediately recognized him without any doubt as being the man who had robbed her.

*Commonwealth v. Cooper, supra,* 333 Pa.Superior Ct. at 564, 482 A.2d at 1016. The *Cooper* court also observed that both *Jackson* and *Hodge* had been decided on the basis of facts which brought into question the fairness of the procedures being challenged. In *Cooper,* the Court determined, the array which had been preserved was sufficient to make it "possible to review the fairness of the procedures challenged." *Id.,* 333 Pa.Superior Ct. at 566, 482 A.2d at 1017.

■ The facts in the instant case are akin to those in *Flynn* and *Cooper.* Here, the Commonwealth was able to produce the book of photographs from which Harris had been identified, although the exact composition thereof had been altered. The evidence showed that a photograph of Curtiss Porter had been added; and that there may have been other changes in the book, since the police had continued to use the book in other cases. However, police testi-

mony also showed that when Harris had been identified, the book had contained numerous pages, with six black and white photographs of black males on each side of a page, and that they had been arranged at random without names or dates attached to the photographs. The evidence was also that there had been only one photograph of Harris in the book, that the police had not assisted Mrs. Readel in making an identification, and that she had experienced no difficulty in selecting Harris as her assailant. Mrs. Mellon also testified at the suppression hearing that the book of photographs was substantially the same as when she had examined it following the robbery and that the police had neither assisted nor made suggestions during the period of time in which she and Mrs. Readel had examined it. Under these circumstances, we hold, the suppression court did not err by refusing to suppress the identification of Harris made by Mrs. Readel from the book of photographs.

In reviewing a claim that such identification testimony should have been suppressed on the grounds of suggestiveness "we must determine whether the identification procedure was so suggestive and conducive to irreparable mistaken identity so as to deny the accused due process." *Commonwealth v. Thomas,* 363 Pa.Super. 348, 352, 526 A.2d 380, 381 (1987). See also: *Commonwealth v. Voss,* 333 Pa.Super. 331, 337, 482 A.2d 593, 596 (1984); *Commonwealth v. Williams,* 323 Pa.Super. 512, 524, 470 A.2d 1376, 1383 (1984); *Commonwealth v. Linder,* 284 Pa.Super. 327, 337, 425 A.2d 1126, 1131 (1981). In the instant case, the facts supported fully the suppression court's finding that the photographic display had not been suggestive. These facts can be summarized as follows: (1) the Commonwealth introduced the photo book at the suppression hearing; (2) it contained 231 photographs; (3) all of the photographs were of black males; (4) the photographs had been randomly organized in the book; (5) all of the photographs were the same size; (6) there were no names or dates on any of the photographs; (7) there was only one picture of appellant in the book; (8) the police in no way sought to influence Mrs.

Readel while she was looking at the photo book; (9) Mrs. Readel had no difficulty in picking appellant as her assailant; and (10) the identification was made approximately one hour after the robbery. These facts so unequivocally dispelled appellant's contention of suggestiveness that the suppression court was moved to comment: "It is probably the most fair photo array possible." We agree.

Having found that the photo array was not suggestive, we also reject appellant's contention that Mrs. Readel's in-court identification testimony was tainted by the photo array. *Commonwealth v. Thomas, supra* 363 Pa.Super. at 352, 526 A.2d at 381; *Commonwealth v. Cooper, supra* 333 Pa.Super. at 566, 482 A.2d at 1017.

The next argument urged by appellant is that the trial court erred by denying a motion in limine made prior to trial to eliminate all reference to the close proximity in time between the crime and Mrs. Readel's identification of his photograph. Appellant reasoned that any such reference would permit the jury to infer that he had been involved in prior criminal activity. The standard by which to measure references to photographic identifications in determining whether they create an inference of past criminality is set forth in *Commonwealth v. Allen,* 448 Pa. 177, 181, 292 A.2d 373, 375 (1972) as follows:

> The suggestion that any reference to a defendant's photograph is so prejudicial that an inflexible rule of reversal must apply is explicitly rejected. We hold that after the reference to a photograph the controlling question is whether or not a juror could reasonably infer from the facts presented that the accused had engaged in prior criminal activity. *A mere passing reference to photographs from which a reasonable inference of prior criminal activity cannot properly be drawn does not invalidate the proceedings since there has been no prejudice as a result of the reference....* (Emphasis added.)

This standard was further explained in *Commonwealth v. Reiss,* 503 Pa. 45, 50, 468 A.2d 451, 453 (1983) as follows:

> *Where there is no indication, as was true here, that the photographs were "mugshots" or that they came from police files, it is not error for a witness to testify that he identified a defendant from photographs shown to him by police. Commonwealth v. Carlos, 462 Pa. 262, 341 A.2d 71 (1975).* Additionally, the photographs were never displayed, marked or referred to at trial. *See Commonwealth v. Smith, 454 Pa. 515, 314 A.2d 224 (1973).* The testimony involved in this case consisted of three references to photographs of the accused during two days of trial. This court has consistently held that passing reference to photographs of the accused, which are not pursued by either counsel as the questioning of the witness continues, does not constitute grounds for a new trial. *Commonwealth v. Craft, 455 Pa. 616, 317 A.2d 213 (1974). See also, Commonwealth v. Krasner, 285 Pa.Super. 389, 427 A.2d 1169 (1981),* (new trial was not mandated where the Commonwealth twice elicited witness testimony regarding photographic identification of defendant). (Emphasis added.)

See also: *Commonwealth v. Bey,* 294 Pa.Super. 229, 239, 439 A.2d 1175, 1180 (1982). The Court in *Reiss, supra* 503 Pa. at 50–51, 468 A.2d at 454, observed further that the jury's awareness that the victim had been shown one hundred photographs was not alone sufficient to create an inference that the photographs were part of police files.

■ Essential to appellant's argument is that, given the short period of time between the crime and the identification, the police could not have obtained the photograph of appellant from any place other than a mug book or their files. A similar argument was rejected in *Commonwealth v. Reiss, supra* at 50, 468 A.2d at 453–454, where the Court said:

> Defendant would have us believe that the fact that his picture was in the possession of the police, without any explanation as to how it was obtained, would cause the jury to infer prior criminal conduct. We disagree. The jury could easily have believed that the police had photo-

graphs of individuals who had no criminal records, for example, the jury could have inferred that the photographs came from a neutral source; or the jury may not even have questioned the source of the photographs. To hold that the jury drew the inference that defendant had engaged in prior criminal activity on these facts alone would be an unreasonable and unsubstantiated conclusion.

See also: *Commonwealth v. Brown*, 511 Pa. 155, 512 A.2d 596 (1986). Moreover, as the trial court observed, the proximity in time between identification and the commission of the crime was far more likely to raise in the minds of the jury the permissible inference that such close proximity enhanced the credibility of Mrs. Readel's identification, rather than raising the impermissible inference that appellant had a past criminal history. The trial court did not err by denying appellant's motion in limine.

■ Appellant's motion for mistrial was based upon a remark made by co-defendant's counsel during closing argument. The precise comment which appellant challenged was "But, anyway, Officer Palestra also said that Debbie's dad, who was a police officer, was present when she went through the books." Appellant contends that this remark allowed the jurors to draw an inference that he had a history of criminal conduct.

A mistrial should only be granted when the jury "could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Commonwealth v. Shepherd*, 269 Pa.Super. 291, 294, 409 A.2d 894, 895 (1979), quoting *Commonwealth v. Allen, supra* 448 Pa. at 181, 292 A.2d at 375. In the instant case, the reference to "books" was, without more, inadequate reason for granting a mistrial. In *Commonwealth v. Reiss, supra* 503 Pa. at 48, 468 A.2d at 452–453, both the victim and a police officer testified that the identification had been made after the victim had been shown two packets of photographs with fifty photos in each packet. The Court summarized the applicable law as follows: "Where there is no indication ... that

94

the photographs were 'mugshots' or that they came from police files, it is not error for a witness to testify that he identified a defendant from photographs shown to him by police." *Id.*, 503 Pa. at 50, 468 A.2d at 453. So, too, in the instant case, the remark by counsel for the co-defendant did not refer to mugshots or police files, but only to books. This was no more likely to create an inference of prior criminal conduct on appellant's part than the reference to the packets of photographs shown to the witness in *Commonwealth v. Reiss, supra.* The trial court did not err when it denied appellant's motion for a mistrial.

The judgment of sentence is affirmed.

POPOVICH, J., recused himself and did not participate in the consideration or decision of this appeal.