J-S51032-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOSEPH VALEK, | |
| Appellee | No. 1709 EDA 2014 |

Appeal from the Order May 2, 2014
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0007747-2013

BEFORE:  GANTMAN, P.J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                **FILED SEPTEMBER 15, 2015**

The Commonwealth appeals from the order of May 2, 2014, which denied reconsideration of the trial court's grant of the motion of Appellee, Joseph Valek, to suppress the identification testimony of the victim, William Hurley.[1]  After review, we are constrained to reverse and remand.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth may take an appeal of right from an order that does not end the entire case if it certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d); **see also Commonwealth v. Torres**, 764 A.2d 532, 536 n.2 (Pa. 2001). The Commonwealth has included such a certification in this case.

We take the underlying facts and procedural history in this matter from the June 13, 2013 and February 10, 2014 notes of testimony, and our independent review of the certified record.

On May 8, 2013, at approximately 4:55 p.m., the victim was walking near the intersection of Rosehill Street and Indiana Avenues in Philadelphia, when he observed Appellee, whom he knew from the neighborhood. (**See** N.T. Preliminary Hearing, 6/13/13, at 4-5, 9-10; N.T. Suppression Hearing, 2/10/14, at 8-10). Appellee called out to him and, when the victim approached him, Appellee stabbed him in the knee and the chest and stole $20.00 from him. (**See** N.T. Preliminary Hearing, 6/13/13, at 5-6; N.T. Suppression Hearing, 2/10/14, at 8-11).

When police responded to the scene, the victim described the perpetrator as a balding, bearded white man, in his thirties, with some weight on him. (**See** N.T. Suppression Hearing, 2/10/14, at 11-12, 40). An ambulance transported the victim to Temple University Hospital, where he remained in intensive care for approximately one week, because of his serious lung injury. (**See** N.T. Preliminary Hearing, 6/13/13, at 6-8; N.T. Suppression Hearing, 2/10/14, at 10-12).

Four days later, Philadelphia Police Detective Danielle Slobodian visited the victim and showed him a series of photographs of people who matched the description he had previously given to the police. (**See** N.T. Suppression Hearing, 2/10/14, at 12-13, 43-45). Appellee was not in any of the

photographs and the victim told the detective that none of the men in the pictures was the person who attacked him. (*See id.* at 12-15; 44-47).

Philadelphia Police Officer Jerry Rahill, who had contacts in the neighborhood where the crime took place, assisted Detective Slobodian in the investigation. (*See id.* at 47, 70). Officer Rahill's inquiries ultimately led him to Appellee and one other individual who matched the description of the perpetrator. (*See id.* at 16, 70-71). On May 25, 2014, Officer Rahill took candid photographs of both possible suspects, and detained the other individual, transporting him to the victim's location. (*See id.* 16, 70-71). When asked, the victim stated that the other individual was not the perpetrator; Officer Rahill flipped through the photographs on his cell phone, and the victim identified Appellee as the attacker. (*See id.* at 16-17, 71-72). Officer Rahill then detained Appellee and transported him to the homeless shelter where the victim was staying; he identified Appellee as his attacker. (*See id.* at 19, 71-72). Subsequently, Officer Rahill purchased a new cell phone and, therefore, he no longer possesses the photograph in question. (*See id.* at 72).

On September 24, 2013, Appellee filed a motion seeking to suppress the identification. The trial court held a hearing on Appellee's motion on February 10, 2014, at which time the Commonwealth entered the testimony from the June 13, 2013 preliminary hearing into evidence. On April 2, 2014, the trial court granted the motion to suppress. The Commonwealth filed a

motion for reconsideration. Subsequently, the trial court denied that motion. The instant, timely appeal followed. On June 2, 2014, the Commonwealth filed a statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). On January 16, 2015, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, the Commonwealth raises one question for our review:

> Where the robbery-stabbing victim, who had seen and interacted with [Appellee] on other occasions before the crime, was shown a single cellphone photo of [Appellee]—whom he also saw during the crime and accurately described to police—did the [trial] court err in suppressing the identification evidence?

(Commonwealth's Brief, at 1).

The Commonwealth challenges the trial court's grant of Appellee's motion to suppress, arguing that the trial court erred in suppressing the victim's out-of-court identification of Appellee. (*See id.* at 9-19). When the Commonwealth appeals from a suppression order, this Court follows a clearly defined scope and standard of review: we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. *See Commonwealth v. Henry*, 943 A.2d 967, 969 (Pa. Super. 2008), *appeal denied*, 959 A.2d 928 (Pa. 2008). This Court must first determine whether the record supports the factual findings of the suppression court and then determine the reasonableness of the inferences and legal conclusions drawn from those findings. *See id.* Here, because our

- 4 -

review of the record demonstrates that the inferences and legal conclusions that the trial court drew were not reasonable or legally correct, we are constrained to reverse.

In its opinion, the trial court identified five bases for its suppression of the out-of-court identification. (*See* Trial Court Opinion, 1/16/15, at 1-14). Firstly, the trial court held that the identification procedure violated established internal police directives. (*See id.* at 5-6). Secondly, the court found that the use of a single photograph to identify the perpetrator is *per se* improperly suggestive. (*See id.* at 6-9). Thirdly, the trial court maintained that the failure of the police to preserve the single photograph violated Appellee's due process rights. (*See id.* at 9-10). Fourthly, the trial court determined that the failure to preserve the photograph violated **Brady v. Maryland**, 373 U.S. 83 (1963). (*See id.* at 10-13). Lastly, the trial court concluded that the failure to disclose the photograph to Appellee violated Pa.R.Crim.P. 573(B)(1)(f).[2] (*See id.* at 13). These conclusions are not legally correct.

_____

[2] Rule 573 provides in relevant part:

**(B) Disclosure by the Commonwealth.**

(1) *Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The

*(Footnote Continued Next Page)*

This Court has stated:

> [w]hether an out of court identification is to be suppressed as unreliable, and therefore violative of due process, is determined from the totality of the circumstances. Suggestiveness in the identification process is a factor to be considered in determining the admissibility of such evidence, but suggestiveness alone does not warrant exclusion. Identification evidence will not be suppressed unless the facts demonstrate that the identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

*Commonwealth v. Fulmore*, 25 A.3d 340, 346 (Pa. Super. 2011), *appeal denied*, 34 A.3d 827 (Pa. 2011) (citations and quotation marks omitted). The courts review the propriety of a challenged identification to determine whether, under the circumstances, the identification was reliable. *See Commonwealth v. Kearney*, 92 A.3d 51, 65 (Pa. Super. 2014), *appeal denied*, 101 A.3d 102 (Pa. 2014).

> Suggestiveness in the identification process is but one factor to be considered in determining the admissibility of such evidence and will not warrant exclusion absent other factors. As this Court has explained, the following factors are to be considered in determining the propriety of admitting identification evidence: the opportunity of the witness to view the perpetrator at the

*(Footnote Continued)* _____

> Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.
>
> *      *      *
>
> (f) any tangible objects, including documents, photographs, fingerprints, or other tangible evidence . . . .

Pa.R.Crim.P. 573(B)(1)(f).

time of the crime, the witness' degree of attention, the accuracy of his prior description of the perpetrator, the level of certainty demonstrated at the confrontation, and the time between the crime and confrontation. The corrupting effect of the suggestive identification, if any, must be weighed against these factors.

*Id.* (citation omitted).

Here, the trial court found that the May 12, 2013 procedure, wherein Detective Slobodian showed the victim a number of photographs, which did not include a photograph of Appellee, and the victim did not make identification, violated certain internal Philadelphia police directives. (*See* Trial Ct. Op., 1/16/15, at 5-6). It also held that the May 25, 2013 procedure, wherein the victim identified a photograph of Appellee while flipping through Officer Rahill's cell phone, violated other internal Philadelphia Police Directives. (*See id.*). Therefore, it suppressed the out-of-court identification. (*See id.*). However, the breach of internal police directives is not, absent a constitutional or statutory violation, a proper basis for suppression of evidence. *See Commonwealth v. Spangler*, 809 A.2d 234, 240-41 (Pa. 2002) (explaining that "judicial enforcement of a regulation or policy governing the conduct of a criminal investigation" is inappropriate unless "compliance is mandated either by a statute or as a matter of constitutional compliance[.]") (citation omitted); *see also United States v. Caceres*, 440 U.S. 741, 749-50 (1979) (failure of Internal Revenue Service agent to follow agency regulations concerning electronic surveillance did not

require suppression of recordings because violation of regulations was not of constitutional significance).

Here, the violation on May 12, 2013 regarding the number of photographs an officer should use in a photo array is both irrelevant, because that procedure did not result in the identification of a suspect, and is not of constitutional dimensions. (*See* Trial Ct. Op., at 5-6). The trial court does not point to, and we cannot find any case where our courts have held that the police are required to use a specific number of photographs to make a photo array constitutional. Further, the trial court does not cite to any statutory violation. The violation in the May 25, 2013 procedure concerned the failure of Officer Rahill to obtain permission of the police commissioner before taking a candid photograph of Appellee. (*See id.* at 6). Again, we see nothing that raises this violation of procedure to one of constitutional or statutory dimensions. Therefore, the trial court erred in suppressing the out-of-court identification on this basis. *See Spangler*, *supra* at 240-41; *see also Caceres*, *supra* at 749-50.

The trial court next suppressed the out-of-court identification because the use of a single photograph to identify Appellee was *per se* impermissibly suggestive. (*See* Trial Ct. Op., 1/16/15, at 7-8). We disagree.

Our Supreme Court has held that "[w]hile the use by police of a single photograph of a suspect in securing identification by a witness **can constitute an improperly suggestive procedure**, *Manson v.*

*Brathwaite,* 432 U.S. 98 . . . (1977), the reliability of a challenged identification is to be judged under a test employing the totality of the circumstances." *Commonwealth v. Buehl*, 508 A.2d 1167, 1178 (Pa. 1986), *cert. denied*, 488 U.S. 871 (1988) (some quotation marks omitted) (emphasis added). Here, our review of the record demonstrates that, under the totality of the circumstances, the identification procedure was not improperly suggestive.

The record reflects that the victim had previously seen Appellee around the neighborhood and would exchange greetings with him. (*See* N.T. Preliminary Hearing, 6/13/13, at 4-5, 9-10; N.T. Suppression Hearing, 2/10/14, at 8-10). The victim was able to observe Appellee for nearly twenty seconds during the crime itself, which took place during the day. (*See* N.T. Suppression Hearing, 2/10/14, at 24). Further, the victim accurately described Appellee to the police. (*See id.* at 12, 40). Moreover, the victim did not identify a suspect on May 12, when Detective Slobodian showed him pictures of other potential suspects; did not identify the other potential suspect that Officer Rahill showed him on May 25; the victim only identified Appellee. (*See id.* at 15-16, 44-47, 71). The victim identified Appellee less than two weeks after the incident. (*See id.* at 9, 13).

There is nothing in this record that demonstrates that the procedure was unduly suggestive. (*See id.* at 15-16, 71). There was no testimony that Officer Rahill did anything to influence the victim's identification; rather,

the record demonstrates that the victim spontaneously identified Appellee as the perpetrator while flipping through the photographs on Officer Rahill's cell phone. (**See id.** at 15-16, 71).

Thus, the law does not support the trial court's conclusion that the showing of a single photograph renders identification of a suspect *per se* unduly suggestive. **See Buehl**, **supra** at 1178; **see also Commonwealth v. Jones**, 426 A.2d 1167, 1170-71 (Pa. Super. 1981). Further, the record does not support the trial court's inferences, (**see** Trial Ct. Op., at 8-9), that the circumstances rendered the identification unduly suggestive. **See Commonwealth v. Bradford**, 451 A.2d 1035, 1037 (Pa. Super. 1982) (holding identification of defendant admissible where victim saw defendant's face for 3-4 seconds during a robbery, and stating "[w]henever the victim of a crime has an opportunity to observe the criminal, the impression of the face of an assailant is etched upon the prey by the terror of the occasion."); **Commonwealth v. Rose**, 401 A.2d 1148, 1155 (Pa. Super. 1979) (holding reliability of identification outweighed any suggestiveness of procedure where victim had opportunity to view defendant for ten seconds). Thus, the trial court erred in holding that the suggestiveness in the use of a single photograph outweighed the reliability of the victim's identification. **See Kearney**, **supra** at 65; **Fulmore**, **supra** at 346.

Next, relying on this Court's decision in **Commonwealth v. Jackson**, 323 A.2d 799, 804 (Pa. Super. 1974), the trial court found that Officer

- 10 -

Rahill's failure to preserve the photograph violated Appellee's due process rights. (*See* Trial Ct. Op., at 9-10). We find this reliance to be misplaced.

In *Jackson*, this Court did not base the finding of a due process violation solely on the fact that the police failed to preserve any of the photographs used in a photo array but also on the facts that the victim observed the defendant for less than one second during the crime and was unable to recollect the identification procedures. *See Jackson*, *supra* at 804. Moreover, in a subsequent decision, this Court limited the holding in *Jackson* to cases where the identification procedure took place after the defendant was in custody, this is not at issue in the instant matter. *See Commonwealth v. Patterson*, 572 A.2d 1258, 1267 (Pa. Super. 1990), *appeal denied*, 592 A.2d 1299 (Pa. 1991). Lastly, even if *Jackson* applied to cases where the defendant was not in custody, it would not apply in the instant matter. While Officer Rahill did not preserve the single photograph of Appellee, Detective Slobodian did preserve the initial photo array, (*see* N.T. Suppression Hearing, 2/10/14, at 52-56), there is no evidence that the police assisted the victim in making the identification, and Officer Rahill was able to describe the circumstances of taking the picture and the picture itself. (*See id.* at 71-73). In these circumstances, this Court has distinguished *Jackson* and declined to suppress evidence. *See Commonwealth v. Harris*, 533 A.2d 727, 730 (Pa. Super. 1987), *appeal denied*, 549 A.2d 914 (Pa. 1988) (distinguishing *Jackson* where police

preserved some of photo array, did not help witness make identification, and witness identified defendant's photograph without hesitation); **Commonwealth v. Cooper**, 482 A.2d 1014, 1017 (Pa. Super. 1984) (distinguishing **Jackson** where witness observed defendant for twenty minutes and detective described missing picture). Thus, the trial court erred in concluding that **Jackson** mandated suppression of the out-of-court identification. **See Patterson**, **supra** at 1267.

The trial court also suppressed the out-of-court identification on the basis that the failure to preserve the photograph constituted a **Brady** violation. (**See** Trial Ct. Op., at 10-13). This Court has explained:

> [i]n **Brady**, the United States Supreme Court held: "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." **Brady**, **supra** at 87. . . . In sum, there are three necessary components to demonstrate a **Brady** violation: "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." **Commonwealth v. Causey**, 833 A.2d 165, 170 (Pa.Super. 2003), *appeal denied*, 577 Pa. 732, 848 A.2d 927 (2004).
>
> > [E]vidence is material if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. The question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict. As **Brady** and its progeny dictate, when the failure of the prosecution to produce material evidence raises a reasonable probability that the result of the trial

> would have been different if the evidence had been produced, due process has been violated and a new trial is warranted. *Id.* (internal citations and quotation marks omitted).

*Commonwealth v. Harris*, 884 A.2d 920, 932 (Pa. Super. 2005), *appeal denied*, 928 A.2d 1289 (Pa. 2007) (citation omitted). It is Appellant's burden to show the Commonwealth suppressed or withheld the evidence. *See Commonwealth v. Spotz*, 18 A.3d 244, 276 (Pa. 2011).

Here, the trial court found "the photograph in the instant matter was favorable to the accused because it is exculpatory and can be used for impeachment purposes." (Trial Ct. Op., at 11). This factual finding is completely without evidentiary support. Officer Rahill described the photograph as being of Appellee's face taken at a distance from one-two feet away, in the area where the incident occurred. (*See* N.T. Suppression Hearing, 2/10/14, at 71-73). The record reflects that, while flipping through Officer Rahill's cell phone, the victim immediately identified the photograph of Appellee as his assailant. (*See id.* at 16, 72). We fail to see how there is anything in the photograph that could remotely be considered exculpatory and/or usable for impeachment purposes.

In *Illinois v. Fischer*, 540 U.S. 544, 547-48 (2004), the United States Supreme Court noted that, simply because material that was potentially useful to a defendant had been destroyed, it did not make the destruction a *Brady* violation and did not violate the Constitution absent a showing of bad faith. *See Fischer*, *supra* at 547-48; *see also*

*Commonwealth v. Snyder*, 963 A.2d 396, 405-06 (Pa. 2009) (same). Here, the photograph, at most, constituted potentially useful material. The record does not demonstrate that Officer Rahill undertook the destruction in bad faith. (*See* N.T. Suppression Hearing, 2/10/14, at 72). Thus, the trial court erred in finding that the destruction of the photograph constituted a *Brady* violation. *See Fischer*, *supra* at 547-48; *Snyder*, *supra* at 405-06.

Lastly, the trial court suppressed the out-of-court identification on the basis that the destruction of the photograph violated Pennsylvania Rule of Criminal Procedure 573(B)(1)(f). (*See* Trial Ct. Op., at 13). However, in *Commonwealth v. Collins*, 957 A.2d 237, 253 (Pa. 2008), our Supreme Court held that Rule 573 does not apply to materials that are in the sole possession of the police. *See Collins*, *supra* at 253 ("The Commonwealth does not violate Rule 573 when it fails to disclose to the defense evidence that it does not possess and of which it is unaware. . . . when the evidence is exclusively in the custody of police, possession is not attributed to the Commonwealth for purposes of Rule 573.") (citations omitted). Here, there is nothing in the record to support a finding that the Commonwealth ever had possession of the photograph. Therefore, the trial court erred in holding that Rule 573 mandated suppression of the out-of-court identification. *See id.* at 253.

Accordingly, for the reasons discussed above, we are constrained to reverse the grant of suppression and remand the matter for further proceedings consistent with this decision.

Order reversed.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/15/2015