572 A.2d 1258

**COMMONWEALTH of Pennsylvania**

v.

**Eugene Edward PATTERSON Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 5, 1989.

Filed April 6, 1990.

334

336

Daniel J. Brabender, Jr., Erie, for appellant,

John J. Trucilla, Asst. Dist. Atty., Erie, for the Com., appellee.

Before DEL SOLE, KELLY and HESTER, JJ.

HESTER Judge:

Eugene Patterson appeals from the February 17, 1989 judgment of sentence of life imprisonment entered by the Court of Common Pleas of Erie County following conviction by a jury for the murder of a ten-year-old girl in Millcreek, Pennsylvania, on July 19, 1966. Appellant asserts that the trial court committed numerous errors. We find no merit in appellant's allegations, and we affirm.

The record reveals the following. The victim, ten-year-old Christine "Tina" Watson, and six-year-old Thomas Levis were playing near a bridge over Walnut Creek in their rural neighborhood in Erie County on July 19, 1966. Thomas Levis stated that a white male of medium build with a slight beard in a white checked shirt approached them, asking them to help him catch minnows around a bend in the stream. He also offered them chewing gum. The victim accompanied the man around a bend in the stream just north of the bridge, but Thomas Levis declined. The victim's sister and a friend, Mary Beth, arrived within minutes seeking Tina since she was late for lunch. Thomas Levis informed them that Tina had accompanied a stranger around the bend. The girls called for Tina and tried to find her in the woods without success. Mary Beth was startled by a man in a red checked shirt with facial hair and an angry expression who rushed from behind nearby bushes. They then heard him depart rapidly from the area in his automobile, tires screeching.

The police were summoned when Tina was not found. One of the first to arrive, Patrolman Hammer, discovered the girl three hundred yards downstream from the bridge behind a tall bush, with her throat slashed. The police secured the area and the coroner was summoned. When the body of the victim was moved, those present observed a six-pointed star toy "deputy" badge under her. The coroner later removed hair and particles from the girl's hand and fingernails, but the results of the tests that he performed were inconclusive.

Police placed roadblocks in the area to inquire of motorists if they had observed a man or a parked automobile near the bridge. Those who responded affirmatively remembered a shiny black late-model car parked on a dirt berm near the bridge. Based on Mary Beth's description of the man and the descriptions of the car by motorists, police questioned appellant since he both matched Mary Beth's description and his automobile was a black late-model vehicle. While appellant was being questioned in a room with

numerous plain clothes officers, Thomas Levis identified him positively from behind a glass window, stating "Yes, that's the man but his hair is different, he bleached it." Notes of Testimony ("N.T."), 1/10/89 at 34. However, appellant denied any knowledge of the crime and was released.

During questioning by police, appellant had denied the charges and stated that he had quit his job earlier that morning and had gone fishing within a twenty minute drive of the murder scene. In the early afternoon, he had his hair cut and shaved. He subsequently showered and washed his clothes. Later in the afternoon, he picked up his wife from work. Police requested that he give them the clothes that he had worn earlier in the day and sought permission to search his automobile. Appellant consented to the search, but it revealed nothing. However, a number of people who viewed his automobile that night identified it as identical to the one that had been parked next to the bridge on the day of the murder. Two days later, police obtained fragments of the clothing that appellant had been seen burning following the murder in an open field owned by his father. Appellant explained that he burned some of his clothes and old shoes because they were covered with fish blood. N.T., 1/12/89, at 42.

Five days later, police utilized the victim's and appellant's clothing along with a volunteer dog-handler, to track the scent of the victim and appellant at the murder scene. Testimony revealed that the dogs tracked the victim to the scene of the killing and then tracked appellant's scent from the bridge to close to the scene.

Finally, trial evidence revealed that Reverend Merle Dickson, who previously had been assigned by the court to counsel appellant after his unrelated arrests for indecent exposure, telephoned the police to warn them that he would bring appellant to the station since appellant desired to confess to the murder. Appellant, however, subsequently changed his mind.

On appeal, appellant argues that the trial court erred in not quashing the information since it violated the prohibition against *ex post facto* prosecution. Specifically, he contends that he unconstitutionally is charged with homicide under 18 Pa.C.S. § 2501 and murder under 18 Pa.C.S. § 2502 when these statutes were not in existence at the time of the murder in 1966, and did not become effective until June, 1972, and June, 1973, respectively.

Appellant notes that prosecution under a newly-enacted law violates the *ex post facto* prohibition when it changes the rules of evidence, the penalties, or the elements of the offense. *See Weaver v. Graham*, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981) (the critical question is whether the law changes the legal consequences of acts occurring prior to its effective date). He observes that the statutory definition of the crime was changed from "willful, deliberate, and premeditated" murder, 18 P.S. § 4701, to an "intentional killing", 18 Pa.C.S. § 2502(d).

The Commonwealth responds that 18 Pa.C.S. § 2502(d) defines an "intentional killing" as "willful, deliberate and premeditated". Further, the elements needed to establish the crime essentially are the same, and the penalty to which appellant is subject, life imprisonment, is the same. Consequently, the Commonwealth concludes that appellant's rights were not violated since the elements of the crime, the burden of proof, and the legal consequences of his crime are equivalent. *Commonwealth v. Hoetzel*, 284 Pa.Super. 623, 426 A.2d 669 (1981); *Commonwealth v. Whitfield*, 275 Pa.Super. 530, 419 A.2d 27 (1980) (a statute is invalid as *ex post facto* only if it makes criminal what was not criminal, aggravates the seriousness of a crime, increases a punishment, or changes the rules of evidence to a lesser standard of proof). We agree with the Commonwealth's analysis of this issue.

Appellant's second argument is that the trial court erred in finding that he was not prejudiced by the twenty-two year delay in prosecuting this case. Specifically, appellant contends that all of the information used in his prosecution

was available to the Commonwealth in 1966, that the delay renders the memories of defense witnesses less reliable, and that certain witnesses, including the barber who cut his hair and patrons at a taproom he visited on the day of the murder, were unavailable due to the delay. He further contends that even though prosecution for murder is not subject to a statute of limitations, it is limited by due process. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).

We note that in order to establish a due process violation for a delay in prosecution, appellant must show that the delay caused substantial prejudice and that the reasons for the delay were improper. *Commonwealth v. Sneed*, 514 Pa. 597, 526 A.2d 749 (1987); *Commonwealth v. Murphy*, 305 Pa.Super. 246, 451 A.2d 514 (1982). We find that appellant has failed to establish a claim of substantial prejudice. The barber was not an essential witness; the fact that appellant went to the barber shop is undisputed. He also fails to allege which patrons became unavailable or that they would have exonerated him in 1966. We will not credit unsubstantiated claims of prejudice. Finally, dimmed memories alone do not cause substantial prejudice. We note that appellant could recall selective events from the period and that the murder was such an indelible event that witnesses clearly remembered it. We conclude that any prejudice to appellant from the delay was minimal, since he at no time alleged an alibi defense, and in fact, the delay may have benefited him.

In addition, the delay was not motivated by improper considerations, such as eliminating favorable defense evidence. The record establishes that appellant was prosecuted when two events occurred: another prime suspect was absolved and a witness suddenly linked appellant to the toy sheriff badge found under the victim's body. We find no factual support for appellant's assertion that the delay in bringing him to trial was deliberate or purposeful. The Commonwealth made a reasonable investigation in 1966 but failed to substantiate appellant's presence at the scene of

the murder. The decision to reopen the investigation after elimination of another prime suspect resulted in a witness recalling that he had noticed a toy badge in appellant's home and in appellant's chest pocket on another occasion. Even an adverse effect on appellant's defense is excusable if the delay was a derivation of reasonable investigation by authorities. *Commonwealth v. Sneed, supra.* We conclude that the reason for the delay proffered by the Commonwealth was proper, in that it previously failed to elicit physical evidence that directly linked appellant to the crime despite a thorough investigation. We find no evidence that the delay was deliberate. Furthermore, any unconstitutional delay commences from when appellant was charged with a crime and not from when authorities were aware of it. *United States v. Marion, supra.*

Appellant next argues that the prosecution failed to lay a proper foundation for admission of testimony regarding the dogs' tracking. He contends that the 1966 police report fails to eliminate certain events which may have invalidated the tracking. He alleges that the police accidently might have added their scent to the clothing and that their prior search of the area might have contaminated the trail, thereby inducing the dogs to track the policemen's scent by mistake. Appellant further contends that the tracking was questionable since one dog was guided by an inexperienced handler, one dog could not detect appellant's scent at all, and "dry, practice runs" were not made that day to test the dogs' fitness. In addition, the trail was over five days old at the time of the tracking, and according to experts' opinions, three or four days is the maximum period that a scent can be detected. Finally, appellant contends the dogs were underweight, one recently had been injured, and they were fatigued as a result of travel to the site.

The Commonwealth counters that a proper foundation had been laid under the standard set forth in *Commonwealth v. Michaux*, 360 Pa.Super. 452, 520 A.2d 1177 (1987), which states that a proper foundation is laid for testimony concerning dog tracking when it is established that the

handler and dogs were qualified by training and experience, the dogs were placed on the track where circumstances showed the defendant had been, and the trail was not so stale or contaminated that a viable track did not exist.

Instantly, testimony at the suppression hearing revealed that the dog handler had over forty years experience in the field of dog tracking, the dogs were kept in an air-conditioned trailer to keep their nostrils fresh, and the dogs were primed with the victim's and appellant's clothing near the bridge where circumstances and witnesses placed them both. The dog trainer testified, contrary to accepted authority, that in his experience trails were viable for five days or more in certain similar, moist, wooded conditions. The trainer further testified that the dogs were able to track despite the travel, their reduced weight, or injury. Furthermore, to corroborate their ability to track appellant, the dogs were given appellant's scent near his dwelling, and they proceeded to his automobile, and then to the rear entrance of his apartment.

Admissibility of evidence is a matter left to the sound discretion of the trial court and will not be disturbed absent on abuse of discretion. *Commonwealth v. Banks*, 513 Pa. 318, 521 A.2d 1 (1987). We conclude that the trial court did not abuse its discretion in determining that a proper foundation existed, leaving the jury to weigh the credibility and reliability of the testimony concerning the various aspects of dog tracking. *See Commonwealth v. Ford*, 451 Pa. 81, 301 A.2d 856 (1973).

Next, appellant argues that his statements to Reverend Dickson were privileged and inadmissible. He argues that Reverend Dickson is a duly ordained clergyman, appellant attended his church with his wife, and communications to a clergyman are privileged under 42 Pa.C.S. § 5943;[1] *see*

1. 42 Pa.C.S. § 5943 provides (emphasis added):
 No clergyman, priest, rabbi or minister of the gospel of any regularly established church or religious organization, except clergymen or ministers, who are self-ordained or who are members of religious organizations in which members other than the leader thereof are

*also Commonwealth v. Musolino,* 320 Pa.Super. 425, 467 A.2d 605 (1983) (privilege applied). Appellant contends that communications with a clergymen in the course of his duties are presumed privileged and that there is no requirement that they also be confessional or penitent in nature. At issue is Reverend Dickson's testimony regarding appellant's desire to confess to the crimes and his observation that appellant had a toy sheriff badge in his possession on two separate occasions.

■■ The Commonwealth argues that not *all* communications to a clergymen are privileged. The privilege is limited to information told in confidence to a religious confessor or counselor. *See Fahlfeder v. Commonwealth of Pennsylvania Board of Probation and Parole,* 80 Pa.Cmwlth. 86, 470 A.2d 1130 (1984). Reverend Dickson was appointed by the court as a counselor to appellant concerning his unrelated arrests for indecent exposure. Appellant never was a practicing member of Reverend Dickson's parish, although he had attended services there with his wife. The Commonwealth maintains that appellant never sought Reverend Dickson or indicated that his statements were to be held by him in confidence. In fact, he wanted Reverend Dickson to accompany him so that he could confess to the police. Further, the circumstances in which the statements were made were such that they were not religious, in that nothing spiritual or in the nature of forgiveness ever was discussed. Further, the Commonwealth argues that observations of the toy badge clearly are not privileged statements or communication.

■■ We agree with the Commonwealth that our legislature did not intend a *per se* privilege for any communication to a clergymen based on his status. We therefore look to the circumstances to determine whether appellant's state-

deemed clergymen or ministers, *who while in the course of his duties has acquired information from any person, secretly and in confidence* shall be compelled, or allowed without consent of such person, to disclose that information in any legal proceeding, trial or investigation before any government unit.

ments were made in secrecy and confidence to a clergyman in the course of his duties. We categorically reject the allegation that this privilege extends to openly-displayed objects, as was the toy sheriff badge.

██ As noted *supra*, Reverend Dickson had been appointed by the court to counsel appellant concerning appellant's indecent exposure infractions. It was Reverend Dickson who approached appellant when the clergyman concluded from newspaper articles that appellant might have murdered Tina Watson. Appellant never sought Reverend Dickson in a confessional role; further there was no evidence that Reverend Dickson was acting in any capacity other than that of counselor. Thus, the statements were not motivated by religious considerations or in order to seek the forgiveness of God. Accordingly, they were not made to Reverend Dickson in the course of his duties as a minister. Instead, they were made because he was a court-appointed counselor. Further, appellant never was a member of the church. Under these circumstances, we conclude that the fact that Reverend Dickson is ordained was not relevant to appellant's statements to him and there is no basis to conclude that appellant's statements were made confidentially or for religious, penitent purposes. Therefore, we conclude that section 5943 does not apply.

Appellant next contests the admission of certain physical evidence, including a shirt, trousers, cowboy boots, several knives, and burned remains of a rain jacket, gloves, and boots. He argues that there is no basis to determine that these items were obtained with a lawful warrant or pursuant to any constitutional exception to the search warrant requirement. The Commonwealth was not able to produce the originals or any copies of two search warrants in this case, one for the clothing and knife found in his home and one for the burned debris obtained from his father's land, since both had been purged from the records due to their age in accordance with normal procedures. As a result, appellant contends that he is prevented from contesting probable cause supporting the warrants. He alleges that

none of the seized articles can be shown by the Commonwealth to be within the "four corners" of the written affidavits which are required to evidence probable cause supporting the warrants. Thus, he argues that the evidence seized is inadmissible. Pa.R.Crim.P. 2003; *Commonwealth v. Cross*, 508 Pa. 322, 496 A.2d 1144 (1985); *Commonwealth v. Luddy*, 281 Pa.Super. 541, 422 A.2d 601 (1980).

We find that the Commonwealth did not need a warrant for the shirt, the boots, or the knife found in appellant's automobile. The record establishes that appellant voluntarily consented to his wife's delivery of his shirt and boots to the police and to the search of his automobile, claiming that he had nothing to hide. This is a valid consensual search. *See Commonwealth v. Markman*, 320 Pa.Super. 304, 467 A.2d 336 (1983). Furthermore, the seizure of the knife in the automobile and the identification of the exterior of the automobile by witnesses clearly are permitted under the "plain view" doctrine. *Commonwealth v. Mangini*, 478 Pa. 147, 386 A.2d 482 (1978); *Commonwealth v. Grabowski*, 306 Pa.Super. 483, 452 A.2d 827 (1982).

Next, testimony revealed that a warrant had been issued by District Justice Calobrese, a neutral magistrate, for the search of appellant's home. This resulted in the seizure of a different knife and a pair of trousers from appellant's home. The Commonwealth contends that appraisal by a neutral magistrate places these items under the good-faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (search pursuant to a warrant issued by a neutral magistrate normally suffices to indicate that the law enforcement officer acted in objective good faith). In *Commonwealth v. Edmunds*, 373 Pa.Super. 384, 541 A.2d 368 (1988), *petition for allowance of appeal granted*, 520 Pa. 595, 552 A.2d 250 (1989), we determined that the exclusionary rule in Pennsylvania is no more extensive than the federal constitutional rule, and therefore the good-faith exception to the exclusionary rule is valid. We conclude

that the good-faith exception applies herein to both warrants since neutral magistrates presumably issued the absent search warrants based on probable cause.

*Commonwealth v. Melilli,* 521 Pa. 405, 555 A.2d 1254 (1989), relied upon by appellant, is distinguishable. In that case probable cause to wiretap never was considered. Instead, we find *Edmunds* controlling in this case, and therefore conclude that the knife and trousers obtained from the search of appellant's house properly were admitted at trial.

Further, as to the legality of the seizure of the burned fragments of clothing, we conclude that appellant has no standing to contest the legality of the search, which occurred on his father's land. In order to have standing, appellant must demonstrate one of the following: 1) that he was present on the premises at a time of the search; 2) that he had a possessory interest in the evidence improperly seized; 3) that possession was an essential element of the prosecution's case; or 4) that he had a proprietary interest in the premises searched. *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986). Here, appellant voluntarily abandoned the clothing by burning it on his father's property, where he had no proprietary interest. *See Commonwealth v. Cihylik,* 337 Pa.Super. 221, 486 A.2d 987 (1985). Additionally, he was not present at the time of the search, nor is possession of the articles an essential element of the Commonwealth's case. Therefore, appellant has no standing to challenge the legality of the seizure of these items.

Appellant's next argument is that the trial court improperly admitted testimony by Officer Hannon regarding identification of appellant by the victim's playmate, Thomas Levis. Appellant contends that the line-up leading to this identification was suggestive and that the testimony was an out-of-court statement admitted in violation of the hearsay rule. *See Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1977) (unnecessarily suggestive pre-trial identification violates due process); *Commonwealth v. Floyd,* 327 Pa.Super. 569, 476 A.2d 414 (1984) (pre-trial identifica-

tion is not an exception to the general prohibition against hearsay evidence and therefore inadmissible).

Testimony by Chief Dever revealed that during the identification at least five white males, none in uniform, were in the room, and several were close in age and build to appellant. Officer Hannon testified that Thomas Levis never hesitated in identifying appellant, except to say that his hair was lighter in color and that he had shaved. Appellant admitted to obtaining a shave and haircut between the time of the murder and the time of the boy's identification.

■ Suggestiveness in an identification procedure can be determined from the totality of circumstances, which is analyzed by reviewing the opportunity of the witness to view the perpetrator during the crime, the accuracy of his description, the certainty that he demonstrated at the time of the identification, any prior misidentification, and the manner in which the identification was conducted. *Commonwealth v. Thompkins*, 311 Pa.Super. 357, 457 A.2d 925 (1983).

■ The witness, although only six years old, clearly saw the perpetrator closely, in daylight, and accurately described him. Shortly thereafter, he identified appellant in a line-up of white men, substantially of the same age, and with essentially the same build. The boy positively identified appellant, even noting that he had shaved and had lighter color hair. We conclude from the totality of the circumstances that this identification was not suggestive or in violation of appellant's due process rights.

■ The trial testimony revealed that Thomas Levis positively identified appellant in the lineup, when he was six years old, but could not do so as an adult, at trial. His prior, inconsistent statement identifying appellant was admitted as substantive evidence. Appellant argues that *Commonwealth v. Floyd*, 327 Pa.Super. 569, 476 A.2d 414 (1984), is dispositive on the hearsay issue. In *Floyd* we held that prior inconsistent statements could not be admit-

ted as substantive evidence. The supreme court subsequently clarified that prior inconsistent statements by a non-party are admissible as substantive evidence where circumstances establish their reliability. *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). We conclude that the instant identification statement, made shortly after the crime, has been demonstrated to be sufficiently reliable to be admissible as substantive evidence. *Id.*

Appellant next contests the admission of testimony relative to Thomas Levis's identification of appellant from a photographic array. Appellant contends that the Commonwealth must reproduce the original array so that he effectively may attack the credibility of the witness identifying him, otherwise he is denied due process. *Commonwealth v. Jackson*, 227 Pa.Super 1, 323 A.2d 799 (1974). Appellant further alleges that the array was suggestive since appellant's photograph was one from only three or four loose photographs in the photo albums used. He therefore contends the array was suggestive in violation of his due process rights. *Commonwealth v. Fowler*, 466 Pa. 198, 352 A.2d 17 (1976).

The Commonwealth's argument on this issue is persuasive. First, appellant was not a suspect in custody but had agreed to questioning. Therefore, *Commonwealth v. Jackson, supra*, and *Commonwealth v. Fowler, supra*, cited by appellant as requiring reproduction of the array when a suspect is in custody, do not apply. Second, *Commonwealth v. Harris*, 368 Pa.Super. 84, 533 A.2d 727 (1987), in which the identification was admitted although the exact array also was not reproduced, is pertinent. In *Harris*, the prosecution presented the photograph of the defendant together with evidence of the number, nature, and characteristics of the photographs used in the array, but did not produce the actual array. There, the identification was admitted where it was revealed that there were approximately forty photographs in black and white, all photographs were of white males, and they all were the same size. *See also Commonwealth v. Flynn*, 314 Pa.Su-

per. 162, 460 A.2d 816 (1983) (identification upheld when only sixteen of twenty-five original photographs were reproduced); *Commonwealth v. Cooper*, 333 Pa.Super. 559, 482 A.2d 1014 (1984) (identification upheld with only eighteen of five hundred photographs reproduced).

Instantly, the Commonwealth did produce the original two photograph albums used. They were books containing essentially the same photographs viewed by Thomas Levis. Thomas Levis positively identified appellant after looking at only seven or eight photographs. Furthermore, Levis had a good opportunity to observe appellant. Consequently, we find enough evidence of reliability to conclude that the trial court properly admitted the testimony. *Commonwealth v. Thompkins, supra,* and *Commonwealth v. Jackson, supra,* relied upon by appellant, are distinguishable since in those cases the prosecution presented *no* record of the array.

Appellant's next argument is that the trial court improperly denied his motion for a change of venue. Appellant argues that Erie County has a population of less than three hundred thousand people and that the case was publicized widely in print, radio, and television media. Appellant alleges that he was prejudiced by emotional references to the slaying, his past criminal record, and references to an alleged confession. He therefore argues that a fair trial could not be held in Erie County and that a change of venue should have been granted. *See Groppi v. Wisconsin*, 400 U.S. 505, 91 S.Ct. 490, 27 L.Ed.2d 571 (1971).

The grant or refusal of a change of venue is within the sound discretion of the trial court, which is in the best position to assess the community feeling, and it will not be disturbed absent an abuse of discretion. *Commonwealth v. Tedford*, 523 Pa. 305, 323, 567 A.2d 610, 618 (1989); *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986). In *Commonwealth v. Kichline*, 468 Pa. 265, 274, 361 A.2d 282, 287 (1975), the supreme court stated that "[i]n reviewing the trial court's decision, the only legitimate inquiry is whether any juror formed a fixed opinion of appellant's guilt or innocence as a result of the pre-trial

publicity." In *Commonwealth v. Casper,* 481 Pa. 143, 151–52, 392 A.2d 287, 291–92 (1978), the court stated, "It is clear that the mere existence of pre-trial publicity does not warrant a presumption of prejudice. Similarly, a possibility that prospective jurors will have formed an opinion based on news accounts will not suffice." Nevertheless, there are times when pretrial publicity is so pervasive and inflammatory that the accused is relieved of establishing actual juror prejudice.

Pre-trial prejudice is presumed if: (1) the publicity is sensational, inflammatory, and slanted towards conviction rather than factual and objective; (2) the publicity reveals the accused's prior criminal record, if any, or if it refers to confessions, admissions, or reenactments of the crime by the accused; *and* (3) the publicity is derived from police and prosecuting officer reports.

*Commonwealth v. Pursell,* 508 Pa. 212, 221, 495 A.2d 183, 187 (1985) (emphasis added).

 Instantly, individual *voir dire* was conducted and all jurors indicated that they had not formed a fixed opinion in the case and could apply the law as instructed. The pretrial publicity, while allegedly extensive, was not included in the record. Appellant merely appended copies of newspaper articles to his brief. Accordingly, this argument is waived. Pa.R.A.P.1921. *See also Auman v. Juchniewitz,* 312 Pa.Super. 98, 458 A.2d 254 (1983); *Commonwealth v. Stanton,* 294 Pa.Super. 516, 440 A.2d 585 (1982) (appellate court may consider only facts which have been duly certified in the record on appeal). Even if this argument were not waived, we find that these articles are not inflammatory or sensational and made only a passing reference to appellant's prior criminal record. Later articles do mention that he stated his intention to confess to Reverend Dickson, but also note that he never actually made any confession to the crime.

We note that these articles predate the trial in excess of one and one-half years, a sufficient time for a "cooling down" period. *Commonwealth v. Kichline,* 468 Pa. 265,

361 A.2d 282 (1976) (six months is sufficient "cooling down" period after prejudicial pretrial publicity). Furthermore, much of the testimony was generated by defense counsel rather than police reports. We therefore conclude that the trial court properly determined that a change of venue was not warranted.

Appellant's next argument is that the trial court erred by admitting appellant's prior criminal record for indecent exposure. *Commonwealth v. Turner*, 454 Pa. 439, 311 A.2d 899 (1973). He argues that this error served to prejudice the jury against him and strip him of the presumption of innocence. *See Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975) (evidence of distinct crimes is limited to establishing a common plan, scheme, or design so related that one crime proves identity of the perpetrator of another).

The Commonwealth responds that evidence of a distinct crime may be introduced at the discretion of the trial court for the limited purpose of establishing motive. *Commonwealth v. Duffey*, 519 Pa. 348, 548 A.2d 1178 (1988); *Commonwealth v. Bricker*, 378 Pa.Super. 265, 548 A.2d 604 (1988). The Commonwealth's contention is that the prior sex crimes serve to establish the motive of appellant to be with the victim and to silence her rather than to risk going to jail if he were caught again. In *Commonwealth v. Duffey, supra,* 519 Pa. at 367, 548 A.2d at 1187, our supreme court stated:

> It is equally clear that evidence of other crimes is admissible where it is relevant to prove motive or intent. [*Commonwealth v. Styles*, 494 Pa. 524, 525, 431 A.2d 978, 980 (1981)]; *Commonwealth v. Brown*, 489 Pa 285, 414 A.2d 70 (1980); *Commonwealth v. Martin*, [479 Pa. 63, 387 A.2d 835 (1978)]. When evidence is admissible for a limited purpose a defendant is entitled to a limiting instruction. *Commonwealth v. Covil*, 474 Pa. 375, 378 A.2d 841 (1977).

The trial court instructed the jury to consider appellant's two prior offenses for the sole purpose of indicating his

motive to commit the crime and not as evidence that he was the one who committed the murder. No details of the prior crimes were admitted. In these circumstances, we do not find error.

Appellant next raises two arguments concerning the trial court's exclusion of evidence and testimony in his behalf. First, he contends that the trial court improperly denied him the opportunity to admit an old photograph to show that he had light hair at the time of the murder. The trial court was prepared to admit this photograph, but only on the condition that the Commonwealth be permitted to admit a photograph of appellant with dark hair to refute it. Appellant declined this option on the basis that the Commonwealth's photograph was a "mug" shot. Appellant argues that he has a right to present evidence in his defense, without any stipulations, so long as it is relevant and not excluded by an established evidentiary rule. *Commonwealth v. Boyle*, 470 Pa. 343, 368 A.2d 661 (1977). Consequently, he asserts the trial court abused its discretion in imposing this requirement.

It is well-settled that the admission of a photograph is within the sound discretion of the trial court and will be reversed only for an abuse of that discretion. *Commonwealth v. McCutchen*, 499 Pa. 597, 454 A.2d 547 (1982); *Commonwealth v. Petrakovitch*, 459 Pa. 511, 329 A.2d 844 (1974). The trial court attempted to balance the demands of both parties in imposing this condition. Appellant elected not to introduce his photograph and does not allege that the Commonwealth possessed photographs other than the "mug" shot to show that he had dark hair at the time of the crime. In these circumstances, we do not conclude the trial court abused its discretion.

Appellant contends that the trial court prevented him from calling numerous expert witnesses to testify that the failure to obtain the following evidence, which should have been secured at the time of the crime, reduced the implication that he murdered the victim: (1) no attempt to remove a fingerprint from the toy badge ever was made; (2) appel-

lant's cowboy boots were not soiled when they should have been due to the soil conditions at the crime scene; and (3) the twenty-two year old recollection of a six-year-old child inherently is unreliable. In addition, the trial court disallowed testimony concerning the average number of summer campers in a camp near the murder scene and testimony that stories about the murder were not published in Conneaut, [Ohio], as testified to by Reverend Dickson.

Rulings on the relevancy of proper evidence rest within the sound discretion of the trial court. *Commonwealth v. Costanzo*, 269 Pa.Super. 413, 410 A.2d 324 (1980). Instantly, the fingerprint expert's testimony regarding the failure to obtain a fingerprint was deemed speculative, conjectural, and lacking a reasonable degree of scientific certainty. The soil expert's testimony was ruled irrelevant since the Commonwealth never argued that the particular cowboy boots introduced were those worn during the murder. A child psychologist and a memory expert were excluded since their testimony improperly would have impinged on the jury's determination of credibility in light of the fact that Thomas Levis's memory previously was assailed on cross-examination by defense counsel. *Commonwealth v. Seese*, 512 Pa. 439, 517 A.2d 920 (1986); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976). Furthermore, testimony regarding the average number of campers in the immediate area was excluded on the basis that the witness could testify only to the average number of campers generally and not to the average number during the summer of the murder. The average number of campers generally was deemed irrelevant to the summer of the murder. Finally, the record clearly demonstrates that Reverend Dickson testified that he recalled reading the news story while visiting Conneaut Lake, Pennsylvania, and not Conneaut, Ohio. We find no error in any of these rulings.

Appellant's final argument is that the trial court erred by refusing to recuse itself on the following grounds: (1) the trial judge had been a prosecuting attorney with the district attorney's office when the case was an open file; (2)

the prosecuting attorney had been involved actively in the trial judge's judicial election campaign; (3) the prosecuting attorney and the trial judge were social acquaintances; (4) the assistant prosecutor was the trial judge's former law clerk; and (5) the trial judge's tipstaff was the mother of the assistant prosecutor. Appellant contends the tipstaff had the opportunity to influence the jury, when no potential improper influence should interfere with the jury's impartial determination. *Williams v. Florida*, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (the proper function of a jury is to be impartial and prevent prejudice from an overzealous prosecutor or biased judge). Appellant maintains that these improprieties violated his right to an impartial tribunal. *Commonwealth v. Fields*, 231 Pa.Super. 238, 331 A.2d 494 (1974) (improper information may prejudice fact finders).

We find these assertions to be devoid of merit. There is absolutely no evidence of any impropriety on the part of the tipstaff in her duties and we refuse to presume any. The trial judge was assigned by the court administrator. The trial judge stated that he had no prior knowledge of the case stemming from his employment in the district attorney's office. He further determined that he could be impartial despite his association with the prosecutors. Such a determination by the trial judge will stand absent an abuse of discretion. *Reilly by Reilly v. SEPTA*, 507 Pa. 204, 489 A.2d 1291 (1985). Our independent and thorough review of the record convinces us that the trial court unfailingly was fair and impartial. Therefore, we find no abuse of discretion.

Judgment of sentence affirmed.