STATE of Delaware,

v.

Tiffany B. PRICE, Defendant.

No. I.D. 0503002170.

Superior Court of Delaware,
Kent County.

Submitted: Aug. 10, 2005.
Decided: Aug. 24, 2005.

Robert J. O'Neill, Jr., Deputy Attorney General, Department of Justice, Dover, Delaware for the State of Delaware.

Kevin M. Howard, Esq., Young, Malmberg & Howard, Dover, Delaware for the Defendant.

## OPINION

YOUNG, J.

### FACTS

Tiffany B. Price, ("Defendant"), was indicted by a Grand Jury on May 2, 2005. Defendant was charged with Sexual Solicitation of a Child, a felony; Unlawful Contact in the Second Degree, a felony; Indecent Exposure, a misdemeanor; and Offensive Touching, a misdemeanor. The offenses are alleged to have taken place on or about February 20, 2005. Defendant has filed a Motion in Limine to Suppress Privileged Communications, allegedly made to one Brian K. Ford concerning

her conduct, which conduct is the subject of the instant prosecution.

The situation surrounding the statements includes the following undisputed circumstances. On February 25, 2005, Defendant met with Mr. Ford on the campus of Delaware Technical and Community College ("Del Tech"). Over the previous year or so, Defendant had been a math tutor and after school counselor for a program known as PEAK (Program for Educational Alternatives for Kent County), located on the Del Tech campus in Dover.

Mr. Ford, whom Defendant had known for about a year prior to this alleged incident, was a math teacher for whom Defendant, prior to her dismissal by PEAK on her being charged herein, was at times an assistant. On February 25, 2005, Mr. Ford, in the course of his teaching duties, was walking to the Teacher's Resource Center to laminate school materials. At a point, Mr. Ford encountered Defendant in the hallway. The topic she wanted to— and did—discuss, was the activity, which is now the subject of this prosecution.

## OPINION

■ Defendant, for these purposes, is not *refuting* what Mr. Ford describes of their conversation (which content was not in evidence at the hearing). Instead, she wants to prevent his testifying altogether. As a non-agent of the State, in a non-custodial situation, Mr. Ford could be a witness to Defendant's voluntary statements, completely available to the State to present testimony thereof. At trial, Defendant would be constrained to endure the recitation of her own statements, subject to the full opportunity to question the accuracy of such recitation by cross-examination or other means. There are, however, possible avenues, which could interfere with that testimonial accounting of statements. One, raised here by Defendant, is contained in D.R.E. 505,[1] by which Defendant may prevent any testimony from a witness, if Defendant establishes that the purported statement arose under specific conditions.

Thus, while the testimony concerning the statements may be accurate and relevant; and while, absent the application of this or a like rule, no one may prevent another from being a witness or disclosing evidence;[2] it may be precluded if, for instance, Defendant demonstrates that the statements were made under the certain limited circumstances described in DRE 505.

1. DRE 505 Religious Privilege.

    (a) *Definitions.* As used in this rule:

    (1) A "clergyman" is a minister, priest, rabbi, accredited Christian Science practitioner or other similar functionary of a religious organization, or an individual reasonably believed so to be by the person consulting him.

    (2) A communication is "confidential" if made privately and not intended for further disclosure except to other persons present in furtherance of the purpose of the communication.

    (b) *General rule of privilege.* A person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as a spiritual adviser.

    (c) *Who may claim the privilege.* The privilege may be claimed by the person, by his guardian or conservator, or by his personal representative if he is deceased. His authority so to do is presumed in the absence of evidence to the contrary.

2. D.R.E. 501. Privileges recognized only as provided.

    Except as otherwise provided by Constitution or statute, or by court decision, or by these or other rules of court, no person has a privilege to: . . .

    (4) Prevent another from being a witness or disclosing any matter or producing any object or writing.

First, the recipient of the statements here: Mr. Ford, must be a clergyman. Mr. Ford was—and was known by Defendant to be—a deacon in a non-denominational ministry located on the Delaware State University Campus. He is, unquestionably, not a "minister, priest, rabbi or Christian Science practitioner." Thus, Defendant has two paths to establish her privilege claim. Either Defendant must demonstrate that Mr. Ford is a "similar functionary of a religious organization," or she must show that she would *reasonably* believe him to be such.

A deacon, while an officer and respected member of a church, is NOT a minister. In this church, the irrefuted evidence was, for instance, that a Deacon is an assistant to an Elder, who is an assistant to the Pastor. Merely an individual's being an important—even critical—functionary in a profession is not identical to his being that particular named professional. A paralegal may not practice law. A nurse, who may well have a more precise working knowledge of a given patient than a physician, is not a physician, and cannot even testify as to injury causation.

In any event, Mr. Ford is not a "similar functionary" to a minister, precluding his providing relevant testimony in a Court of law.

█ There remains, then, the question of whether Defendant "reasonably believed" Mr. Ford to be a "similar functionary."

In this case, Defendant never observed Mr. Ford attired in ministerial garb or conducting services, while she worshiped at the Kingdom of Worship Center—Mr. Ford's Delaware State (not Del Tech) campus affiliation.

Indeed, Defendant neither ever attended Mr. Ford's church nor—whether that would be significant or not—heard Mr. Ford say that he was a minister. The allegation by Defendant is that "Defendant was under the impression that Mr. Ford held 'a position' in this church." That is a far cry from Mr. Ford's being a clergyman.

Further, it should be noted that, as an additional matter of fact, Defendant's father is an Associate Pastor in a church, and Defendant's grandmother is a Pastor. Hence, Defendant should be even more aware than the average person that deacons and pastors are hardly one and the same. Again, though certainly not determinative, this is additional evidence that even a subjective test of belief in "similarity" could not be met by Defendant.

Moreover, in order to prevent the disclosure of information, an effort generally disfavored in the law, as noted in D.R.E. 501(4), Defendant must show that the communication was made in the clergyman's "professional character as a *spiritual advisor* (emphasis added)."

There is little suggestion of that in this case. "Getting something off of one's chest" is not the equivalent of a spiritual communication. It may be an aspect of it, but it is not the equivalent. Here, Mr. Ford was in the course of his teaching responsibilities and in his teaching environment. He described the context as that of a concerned friend. Mr. Ford even suggested that Defendant contact Ms. Ford, who was an Elder in the same church, and one step closer to the Pastor, if she wanted to consider spiritual approaches to her dilemma.

So, we look to this communication, noting again that a mere expectation of privacy—as anyone might have with a relative, a close friend, a respected acquaintance—will not prevent relevant testimony from a Court proceeding. Only a very limited number of specifically defined statutory

circumstances will so interfere with the orderly presentation of evidence in a case.

While case law on this topic is not abundant, and what has been found is little more than analytically helpful, we can look to what we have.

*Commonwealth of Pennsylvania v. Patterson,*[3] on its analysis, observes that a statement to an *acknowledged* clergyman is not precluded in a situation where that *clergyman* was acting in a capacity other than *as* a clergyman, even where (as there) he was acting as a counselor.

Like this Defendant, Defendant Patterson was not a worshiper in that clergyman's church.

Thus, the Pennsylvania Court held, the statements were not motivated by RELIGIOUS considerations, or in circumstances evidencing the search for forgiveness by a deity. That is undeniably the situation in the instant case.

The Pennsylvania statute[4] does differ from Delaware's in that it specifically includes the phrase "while in the course of his [clerical] duties," which our Rule does not, although Delaware's limitation of: "in his professional character as a spiritual advisor"[5] may be tantamount to the same thing.

Stating the idea a bit differently, the New Jersey Court, in *State v. Cary,*[6] had a circumstance where Defendant Cary came to a church for repeated religious services and meetings with its Pastor for "spiritual advice." The Pastor then called one Deacon Perry to assist Defendant Cary. Deacon Perry, who was also an employed policeman, having "received" Defendant Cary from the Pastor, was told the incriminating statements, during a period where he was "praying with" the Defendant. The New Jersey court held that, whatever Perry's religious status, in this case he was functioning in dual capacities—one clerical, one secular. Simply coming to a person, who has some religiously related function, does not create a screen thwarting the admission of otherwise relevant information.

Though not directly on point, the Delaware Federal Court case of *Pagano v. Hadley,*[7] demonstrates the decided limitation of the use of D.R.E. 505 to preclude testimony. There, a Bishop's attempt to avoid divulgence of documents relative to one of his own priests was not permitted; and the reason is that the 505 privilege must be applied narrowly to the specific provisions of the Rule.

In this case, Defendant spoke to the friend and former co-worker teacher. While she allegedly sought to assure the secrecy of the statements, she is not capable of creating a bar to the due presentation of testimony. Such an effort, appropriately, is not to be permitted unless the strict limitations of the specific Rule are conformed to.

Here, Mr. Ford, the recipient of Defendant's statement, was not a clergyman as required by Rule; he was not even in a predominantly clerical position; the Defendant was not a parishioner of Mr. Ford's church; and the Defendant had no legitimate reason, beyond what she would have with *any* confidant, to expect sanctity from the Court proceedings.

---

**3.** 392 Pa.Super. 331, 572 A.2d 1258 (1990)

**4.** 42 *Pa.C.S.* § 5943.

**5.** D.R.E. 505.

**6.** 331 N.J.Super. 236, 751 A.2d 620 (2000)

**7.** 100 F.R.D. 758, 760 (D.Del.1984).

## CONCLUSION

For any of the foregoing reasons, and particularly for their totality, Defendant's Motion to Suppress the testimony of Mr. Ford on the basis of D.R.E. 505 is DENIED.

**SO ORDERED.** .