IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ivy Hill Congregation of Jehovah's : 
Witnesses, : 
                    Petitioner : 
                         :   No. 316 M.D. 2020
      v. :   Argued: March 9, 2022
                         : 
Commonwealth of Pennsylvania, : 
Department of Human Services, : 
                   Respondent : 

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                FILED: May 10, 2022

Ivy Hill Congregation of Jehovah's Witnesses (Ivy Hill) moves for summary relief against the Commonwealth of Pennsylvania, Department of Human Services (DHS). Ivy Hill seeks two declarations under the Declaratory Judgments Act (DJA).[1] First, Ivy Hill seeks a declaration that Ivy Hill's elders qualify as "clergymen" under Section § 6311.1(b)(1) of the Child Protective Services Law (CPSL),[2] 23 Pa.C.S. § 6311.1(b)(1), which relieves mandated reporters of a statutory duty to report suspected child abuse to DHS if the report is based on a confidential communication subject to the evidentiary clergymen privilege found in Section 5943 of the Judicial Code, 42 Pa.C.S. § 5943. Second, Ivy Hill seeks a declaration that

_____

[1] 42 Pa.C.S. §§ 7531-7541.
[2] 23 Pa.C.S. §§ 6301-6388.

Section 5943 is unconstitutional if this Court holds that Ivy Hill's elders are not "clergymen" under Section 5943. After careful consideration, we dismiss Ivy Hill's petition for review and motion for summary relief for lack of jurisdiction.

## I. BACKGROUND

We briefly summarize the facts in the light most favorable to DHS, as set forth in Ivy Hill's motion for summary relief. *See generally* Mot. for Summ. J., 9/21/21, at 4-40.[3] Ivy Hill, located in Philadelphia, Pennsylvania, is a congregation consisting of 140 congregants who follow the tenets of the Jehovah's Witnesses organization. Every Jehovah's Witness congregation is led by a "body of elders," a group of five to seven volunteers. All elders receive ecclesiastical training to fulfill their responsibilities for hearing confessions and providing spiritual counseling. *Id.* at 23-24. Only elders are authorized to hear and respond to a congregant's confession of sin, and elders are obligated to maintain the confidentiality of any such confession. *Id.* at 25-30. Because a congregant could confess to child abuse, Ivy Hill filed a petition for review seeking the declaratory relief set forth above.

### A. Relevant Provisions of the CPSL and the Judicial Code

The goal of the CPSL is "to encourage more complete reporting of suspected child abuse" and, "to the extent permitted by this chapter, to involve law enforcement agencies in responding to child abuse[.]" 23 Pa.C.S. § 6302(b). To achieve that goal, the CPSL requires certain individuals, *i.e.*, "mandated reporters," to report suspected child abuse to DHS. 23 Pa.C.S. §§ 6311(a), 6313(a). Mandated reporters include a "clergyman, priest, rabbi, minister, Christian Science practitioner, religious healer or spiritual leader of any regularly established church

---

[3] DHS filed a brief but did not file a response in opposition to Ivy Hill's summary relief motion; additionally, DHS did not supplement the record. *See* Pa.R.Civ.P. 1035.3. Thus, DHS did not dispute any facts set forth in Ivy Hill's motion.

or other religious organization." *Id.* § 6311(a)(6). A willful failure to report may result in criminal penalties. *Id.* § 6319.

Section 6311.1(a) of the CPSL states that "the privileged communications between a mandated reporter and a patient or client" of said reporter (1) do not apply to a situation involving child abuse and (2) would still obligate a mandated reporter to report to DHS. 23 Pa.C.S. § 6311.1(a). This rule is subject to Section 6311.1(b), which states that "confidential communications made to a member of the clergy are protected under" the evidentiary privilege of 42 Pa.C.S. § 5943. *Id.* § 6311.1(b); *see also id.* § 6381(c) (stating that privileged communications "between a minister and a penitent" may be "grounds for excluding evidence at any proceeding regarding child abuse or the cause of child abuse").

Under Section 5943, clergymen cannot be compelled to disclose information acquired "from any person secretly and in confidence . . . in any legal proceeding, trial or investigation before any government unit." 42 Pa.C.S. § 5943.[4] Section 5943 excludes two classes of clergymen: those who are either (1) self-ordained or (2) members of religious organizations that classify non-leaders as

---

[4] "Prior to 1959, . . . there was neither a common law nor statutorily[]based clergy privilege in Pennsylvania." Rev. Martin R. Bartel, O.S.B., <u>Pennsylvania's Clergy-Communicant Privilege: For Everything There Is . . . A Time to Keep Silent</u>, 69 Temp. L. Rev. 817, 821 (1996).

> At present there is no case law interpreting Pennsylvania's definition of clergy. The current statutory definition seems to be constructed with a Judeo-Christian bias. Consequently, enforcement of the statute as written could be challenged under the First Amendment's Establishment and Free Exercise clauses, [U.S. Const. amend. I,] especially with the ever-increasing number of non-Judeo-Christian religious believers who populate American society. Also, Pennsylvania restricts the privilege to members of regularly established religions.

*Id.* at 822 (cleaned up); *accord* Claudia G. Catalano, Annotation, *Who Are "Clergy" or Like Within Privilege Attaching to Communications to Clergy Members or Spiritual Advisers*, 101 A.L.R.5th 619 (originally published 2002) (reflecting no Pennsylvania state or federal cases defining "clergy").

clergymen or ministers. *Id.* In sum, all clergymen may invoke the Section 5943 privilege, unless they fall within either of the two excluded classes. *Id.*

## B. Ivy Hill's Petition for Review

Having summarized the applicable statutes at issue, we return to Ivy Hill's petition for review. In its first count, Ivy Hill requests a declaration that its elders are "clergymen" under 42 Pa.C.S. § 5943, and, thus, entitled to the protections of 23 Pa.C.S. § 6311.1(b)(1). Pet. for Review, 5/20/20, at 20. Alternatively, in its second count, Ivy Hill requests a declaration that to the extent Section 5943 excludes Ivy Hill's elders, that statute is facially unconstitutional or unconstitutional as applied to Ivy Hill. *Id.* at 24-25. Ivy Hill also filed an application for summary relief, which requested identical relief. Appl. for Summ. Relief, 5/22/20, at 19, 23-24.

DHS filed preliminary objections, asserting that Ivy Hill (1) lacked standing; (2) failed to join indispensable parties; (3) failed to exhaust administrative remedies; (4) is not entitled to relief on the first count because the requested relief would not terminate the controversy; and (5) is not entitled to relief on the second count. *Ivy Hill Congregation of Jehovah's Witnesses v. Dep't of Hum. Servs.* (Pa. Cmwlth., No. 316 M.D. 2020, filed June 17, 2021) (unreported) (*Ivy Hill I*), slip op. at 7-21, 2021 WL 2472274, at *4-10. The *Ivy Hill I* Court overruled DHS's preliminary objections and denied summary relief because no evidentiary record existed addressing whether Ivy Hill's elders fell within the scope of Section 5943. *Id.*, slip op. at 22, 2021 WL 2472274, at *11. Because the parties are familiar with this matter, we do not recap *Ivy Hill I* further. *See id.*, slip op. at 7-23, 2021 WL 2472274, at *4-11.

4

## C. Ivy Hill's Motion for Summary Relief

Following discovery, Ivy Hill filed a motion for summary relief again requesting the aforementioned declarations. *See* Mot. for Summ. J., 9/21/21, at 41.[5]

### 1. DHS's Arguments

First, DHS argues that it is not antagonistic to Ivy Hill. DHS's Br. in Opp'n at 7. DHS reasons that it does not oppose, has not sued, and has not threatened to sue Ivy Hill because DHS cannot enforce the CPSL's criminal penalties at 23 Pa.C.S. § 6319. *Id.* at 7-9. DHS suggests that Ivy Hill should have named the Commonwealth or the Office of Attorney General (OAG) as a respondent if Ivy Hill was concerned about potential legal action by the Commonwealth. *Id.* at 9-11. Second, DHS contends that because it does not investigate alleged violations of the CPSL, DHS is not the appropriate respondent. *Id.* at 11-14. Because DHS is not the appropriate respondent, DHS claims that it is "not the proper party to have a declaration entered against it," and therefore this Court should dismiss Ivy Hill's petition for review. *Id.* at 14. Third, DHS asserts that Ivy Hill improperly seeks broad declaratory relief in the form of an advisory opinion and to validate a defense to a potential future lawsuit. *Id.* at 14-17. Fourth, DHS argues that even if this Court has jurisdiction under the DJA, Ivy Hill's suit is barred by the statute of limitations. *Id.* at 17-19.

### 2. Ivy Hill's Arguments

Ivy Hill counters that DHS does not dispute the facts or law presented in Ivy Hill's motion for summary relief. Ivy Hill's Reply Br. at 2-4. In any event,

---

[5] To be precise, Ivy Hill's motion for summary relief requests a declaration that its elders are entitled to the Section 5943 privilege "when circumstances warrant," but Ivy Hill's petition for review did not include that qualifying phrase in the prayer for relief. The omission of that phrase is not significant because "circumstances" always must exist in order to invoke the privilege successfully.

Ivy Hill construes DHS's arguments as a rehash of DHS's arguments in support of its preliminary objections, which the *Ivy Hill I* Court rejected. *Id.* at 5-6.

Regardless, on the merits, Ivy Hill first argues that DHS is an antagonistic party because DHS will not opine on whether Ivy Hill's elders are clergymen under the CPSL. *Id.* at 7. In support, Ivy Hill emphasizes that because DHS is the only Commonwealth agency receiving the mandated CPSL reports, DHS is the only proper respondent. *Id.* at 9-10. Second, Ivy Hill contends that DHS is a proper respondent notwithstanding DHS's lack of power to criminally investigate alleged CPSL violations. *Id.* at 11-12 (discussing primarily *Robinson Twp. v. Commonwealth*, 83 A.3d 901 (Pa. 2013), *Office of the Governor v. Donahue*, 98 A.3d 1223 (Pa. 2014), and *Public Advocate v. Brunwasser*, 22 A.3d 261 (Pa. Cmwlth. 2011)). Third, Ivy Hill maintains that it filed this DJA action to ensure its elders could "comply with a *criminal* law [and] not to defeat some pending or forthcoming civil action." *Id.* at 16 (emphasis in original). Fourth, Ivy Hill challenges DHS's statute of limitations argument on numerous grounds. *Id.* at 16-25.[6]

## II. DISCUSSION

We begin by discussing this Court's jurisdiction under the DJA. Section 7532 of the DJA provides that courts "have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[7] 42 Pa.C.S. § 7532. "[W]hether a court should exercise jurisdiction over a declaratory

---

[6] Because we dismiss Ivy Hill's petition for review for lack of jurisdiction, we need not summarize the various arguments regarding the statute of limitations.

[7] We recognize that Ivy Hill has moved for summary relief. *See generally* Pa.R.A.P. 1532(b); *McLinko v. Dep't of State*, 270 A.3d 1243, 1250 (Pa. Cmwlth. 2022). A court must have subject matter jurisdiction before it can rule on a motion for summary relief. *See generally Clean Air Council v. Sunoco Pipeline L.P.*, 185 A.3d 478, 488 (Pa. Cmwlth. 2018).

6

judgment proceeding is a matter of sound judicial discretion. Thus, the granting of a petition for a declaratory judgment is a matter lying within the sound discretion of a court of original jurisdiction." *Brouillette v. Wolf*, 213 A.3d 341, 357 (Pa. Cmwlth. 2019) (cleaned up). Courts "may refuse to render or enter a declaratory judgment or decree where such judgment or decree, if rendered or entered, would not terminate the uncertainty or controversy giving rise to the proceeding . . . ." 42 Pa.C.S. § 7537; *Dechert LLP v. Pa. Dep't of Cmty. & Econ. Dev.*, 234 A.3d 911, 916 (Pa. Cmwlth. 2020) (stating, "Declaratory relief is suitable when litigation is both imminent and inevitable and the declaration sought will practically help to end the conflict between the parties." (cleaned up)).

We have construed imminent and inevitable litigation as requiring the presence of antagonistic claims. *Brouillette*, 213 A.3d at 357. For example, in *Ruszin v. Department of Labor & Industry, Bureau of Workers' Compensation*, 675 A.2d 366 (Pa. Cmwlth. 1996), William Page, who suffered a work-related partial hearing loss, filed a declaratory judgment action in this Court against his employer. *Ruszin*, 675 A.2d at 369. To simplify, the issue was whether Page could raise a claim for compensation for total hearing loss before he actually suffered total hearing loss. *Id.* at 371. The *Ruszin* Court held that until Page suffered a total hearing loss, there was no "antagonistic claim indicating imminent or inevitable litigation," and, therefore, awarded relief in favor of the employer. *Id.*

With respect to whether the declaration would help to end the conflict between the parties, we resolved a similar issue in *McCord v. Pennsylvania Gaming Control Board*, 9 A.3d 1216 (Pa. Cmwlth. 2010). In *McCord*, Pennsylvania's Treasurer filed a declaratory judgment action in this Court, seeking a declaration that

7

the Treasurer had the right to participate in Gaming Control Board (Board) meetings. *McCord*, 9 A.3d at 1217. In other words, the Treasurer sought to enforce Section 1201(e) of the Pennsylvania Race Horse Development and Gaming Act (Gaming Act), 4 Pa.C.S. § 1201(e), which states that the Treasurer must serve on the Board. *Id.* The Board filed preliminary objections arguing that the Court "should refuse to enter a declaratory judgment where the relief in question would not resolve how the Treasurer may 'fully participate' in such meetings." *Id.* at 1220. The *McCord* Court disagreed, reasoning that issuing the declaration would resolve the controversy. *Id.*

Instantly, we agree with DHS's first argument that imminent and inevitable litigation does not exist. The record does not establish that DHS opposes, has sued, or threatened to sue Ivy Hill. Similar to *Ruszin*, in which the Court held the petitioner did not have an "antagonistic claim indicating imminent [and] inevitable litigation," nothing of record here establishes or otherwise indicates imminent and inevitable litigation between DHS and Ivy Hill. *Cf. Ruszin*, 675 A.2d at 371. Indeed, as discussed in further detail below, DHS cannot even initiate litigation regarding the CPSL. Therefore, we agree with DHS that we may decline to exercise our jurisdiction under the DJA and dismiss Ivy Hill's petition for review. *See Brouillette*, 213 A.3d at 357.

We also agree with DHS's second argument that the requested declaratory relief would not terminate the controversy. *See* 42 Pa.C.S. § 7537; *Brouillette*, 213 A.3d at 357. Unlike *McCord*, in which this Court held that granting the Treasurer's requested relief to enforce Section 1201(e) of the Gaming Act, 4 Pa.C.S. § 1201(e), would resolve the controversy, in the instant case, granting relief would not terminate the controversy because DHS does not enforce the CPSL. *Cf. McCord*, 9 A.3d at 1220. Either the Commonwealth or one of its agencies tasked

8

with enforcing the reporting privilege at 23 Pa.C.S. §§ 6311-6311.1, would address whether Ivy Hill's elders are "clergymen" such that they are immune from any Section 6319 penalties. *See generally* 23 Pa.C.S. § 6319; *cf. McCord*, 9 A.3d at 1220. In other words, declaratory relief binding DHS to an interpretation that Ivy Hill's elders qualify as "clergymen" would not terminate the ongoing controversy because the declaration would not bind the Commonwealth or its agencies designated to enforce the CPSL.

Further, the CPSL reporting privilege implicates the evidentiary privilege at Section 5943. *See* 23 Pa.C.S. § 6311.1(b). Our Supreme Court observed that "application of the [Section 5943] clergy-communicant privilege is not based solely on the clergy's status, but whether the communication was made in confidence in the context of a penitential or spiritual matter." *Commonwealth v. Stewart*, 690 A.2d 195, 200 (Pa. 1997); *see generally Commonwealth v. Patterson*, 572 A.2d 1258, 1264 (Pa. Super. 1990) (explaining that the trial court exercises its discretion to determine whether a communication with a clergyman is privileged). In other words, invoking the Section 5943 privilege requires a court or agency to review the communication at issue. *See* 42 Pa.C.S. § 5943; *Patterson*, 572 A.2d at 1264.

Here, because DHS does not enforce the CPSL, DHS is not a government unit charged with reviewing the communications at issue, *i.e.*, determining whether a communication is confidential under 42 Pa.C.S. § 5943, as incorporated by 23 Pa.C.S. § 6311.1(b). It follows that a declaration that Ivy Hill's elders are "clergymen" as against DHS would not terminate the controversy because proper application of Section 5943 requires a court or appropriate agency to review

the communication at issue. *See* 42 Pa.C.S. § 5943; *Stewart*, 690 A.2d at 200.[8] In sum, because DHS does not enforce the CPSL or construe the evidentiary privilege at 42 Pa.C.S. § 5943, in this case, no declaratory relief could issue that would terminate the controversy. *Cf. McCord*, 9 A.3d at 1220.[9]

### III. CONCLUSION

For these reasons, and under the unique circumstances of this case, we exercise our discretion to dismiss Ivy Hill's petition for review and the motion for summary relief. *See Brouillette*, 213 A.3d at 357. We therefore do not have to address DHS's other arguments, including whether the statute of limitations bars Ivy Hill's action.

LORI A. DUMAS, Judge

---

[8] Unlike *Ivy Hill I*, we are resolving Ivy Hill's summary relief motion. *See Bates v. Del. Cnty. Prison Emps.' Indep. Union*, 150 A.3d 121, 127 (Pa. Cmwlth. 2016) (stating, "[o]ur Supreme Court has made clear that a prior ruling on preliminary objections does not preclude a contrary ruling . . . on a subsequent motion for summary judgment" (citation omitted)).

[9] We acknowledge that Ivy Hill relied on *Robinson Township*, *Public Advocate*, and *Donahue*, for the proposition that DHS's inability to enforce the CPSL is not relevant in awarding declaratory relief. None of those cases, however, involve the reporting and evidentiary privileges associated with the legitimate governmental interest in preventing and reporting child abuse. *See* 23 Pa.C.S. § 6302(b); *Donahue*, 98 A.3d at 1225 (interpreting statute setting a timeframe for responding to written requests for documents); *Robinson Twp.*, 83 A.3d at 923 (resolving challenge to statute that prevented physicians from disclosing medical treatment information); *Pub. Advoc.*, 22 A.3d at 263 (addressing legality of rate increase for water); *cf. Nunez v. Watchtower Bible & Tract Soc'y of N.Y., Inc.*, 455 P.3d 829 (Mont. 2020) (resolving, in non-declaratory judgment case, whether Jehovah's Witnesses were exempt from reporting under Montana's mandatory child abuse reporting statute).

We also observe that assuming that Ivy Hill's elders are not "clergymen," then there is no statutory obligation to comply with the CPSL, and therefore no potential criminal penalties. Ivy Hill has pursued this DJA action to determine whether its elders are subject to the CPSL.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ivy Hill Congregation of Jehovah's       :
Witnesses,                                :
                          Petitioner     :
                                                :  No. 316 M.D. 2020
                v.                            :
                                                  :
Commonwealth of Pennsylvania,             :
Department of Human Services,             :
                      Respondent     :

## **O R D E R**

AND NOW, this 10th day of May, 2022, Ivy Hill's petition for review and motion for summary relief are dismissed for lack of jurisdiction.

                                      _____
                                        LORI A. DUMAS, Judge